**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE APPLICATION OF
LAKE HOLDING & FINANCE S.A.,

REQUEST FOR DISCOVERY
PURSUANT TO 28 U.S.C. § 1782

Civil Action No. 20-mc-00652

**MEMORANDUM OF LAW IN SUPPORT OF AN APPLICATION**
**FOR DISCOVERY PURSUANT TO 28 U.S.C. S 1782**

### TABLE OF CONTENTS

I. PRELIMINARY STATEMENT…………………………………………………………..1

II. JURISDICTION AND VENUE………………………………………………………..9

III. FACTUAL BACKGROUND …………………………………………………………...9

IV. ARGUMENT …….……………………………………………………………………15

A. 28 U.S.C. § 1782 PROVIDES FOR DISCOVERY IN AID OF REASONABLY
CONTEMPLATED FOREIGN ACTIONS………………………………………………15

B. LAKE HOLDING SATISFIES THE STATUTORY REQUIREMENTS

1. Lake Holding, the Applicant, Is an Interested Person to the Foreign Proceedings …………...16

2. The Persons or Entities with Possession, Custody and/or Control of the Discovery Sought
Reside in or Are Found Within this District ……………………………………………17

3. Discovery Is Sought for use in the Foreign Proceedings, Which Are or Will Be Held Before
One or More Foreign Tribunal ……………………………………………………………18

4. No Other Factors Weigh Against Allowing Discovery ………………………………………20

C. LAKE HOLDING ALSO SATISFIES INTEL'S DISCRETIONARY FACTORS……………...20

D. THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT
FOREIGN DISCOVERY ASSISTANCE  …………………………………………………..23

V. CONCLUSION …………………………………………………………………...24

## **TABLE OF AUTHORITIES**

**Cases**

*In re Accent Delight Int'l v. Sotheby's,*
  791 Fed. App'x 247 (2d Cir. 2019) ……………………………………………..18

*In re Application of Aldunate,*
  3 F.3d 54, 62 (2d Cir.), *cert, denied,* 510 U.S. 965 (1993)…………………………18

*Att'y Gen. of British V.I. v. Hyman,*
  No. 19-MC-164, 2020 WL 2615519, at *5 (D.D.C. May 23, 2020) ………………18

*In re Bank of Cyprus Public Co. Ltd.,*
  10-mc-00294-SRC, slip op. at *2 (D.N.J. Jan. 13, 2011)…………………………..19

*In re Bank of Cyprus Public Co. Ltd.,*
  10 Misc. 23, 2011 WL 223168, at *2 (S.D.N.Y. Jan. 21, 2011) ……………………19

*Christof Pfaff v. Deutsche Bank AG,*
  20-MC-25 (SDNY 2020 ………………………………………………………………...18

*JSC MCC EuroChem v. Chauhan,*
  2018 WL 3872197, 17-mc-00005, *11- 12 (M.D.Tenn. Aug. 8, 2018)

*In re Application of Galaxy Energy and Resources Co. Pte Ltd.,*
  Civil Action No. 19-MC-287-LTS (SDNY 2019) …………………………………..18

*In re Godfrey,*
  526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007)…………………………………………17

*In re Edelman,*
  295 F.3d 171, 179-80 (2d Cir. 2002) ……………………………………………..17

*In re Application of Hornbeam Copr.,*
  2014 WL 8775453, *1 (S.D.N.Y. Dec. 24, 2014)…………………………………18

*Intel Corp.* v. *Advanced Micro Devices, Inc.,*
  542 U.S. 241, 259 (2004)………………………………………………………..15-24

*Lancaster Factoring Co. Ltd. v. Mangone,*
  90 F.3d 38, 41 (2d Cir. 1996)……………………………………………………..19

*In re Application of Malev Hungarian Airlines,*
  964 F.2d 97, 101 (2d Cir.), *cert, denied,* 506 U.S. 861 (1992)……………………..16

*In re Marano,* No. 09- 80020,
   2009 WL 482649, *2 (N.D. Cal. Feb. 25, 2009) ………………………………………20

*In re Ex Parte Application of Tiberius Group AG,*
   *19-MC-467 (SDNY 2020)*…………………………………………………………………18

*In re del Valle Ruiz et al.,*
   939 F. 3d 520, No. 18-3226 (2d Cir. Oct. 7, 2019)…………………………………………18

*Weber v. Finker,*
   554 F.3d 1379, 1381 (11th Cir.), cert. denied 558 U.S. 816 (2009)…………………19

*In re Wilhelm,*
   470 F. Supp. 2d 409, 410-11 (S.D.N.Y. 2007)………………………………………………20

## **Statutory Authorities**

28 U.S.C. § 1782 ……………………………………………………………………..15-24

Applicant, Lake Holding & Finance S.A. ("**Lake Holding**"), an entity organized under the laws of the British Virgin Islands ("**BVI**"), through its undersigned counsel, Benaur Law LLC, respectfully submits this memorandum of law (this "**Memorandum**"), together with the Declarations of George Benaur ("**Benaur Decl.**"), Vladimir Melnichenko ("**Melnichenko Decl.**"), and Chrysostomos Nicolaou (the "**Nicolaou Decl.**") in support of its Application for Discovery Pursuant to 28 U.S.C. § 1782 (the "**1782 Application**"), and states as follows:

# I. PRELIMINARY STATEMENT

This 1782 Application is seeking discovery with respect to documents located in the United States and in this Judicial District for use in the following pending and contemplated foreign proceeding(s) (the "**Foreign Proceedings**"):

(i)     pending judgment recognition and enforcement proceedings in Cyprus which include orders protecting (a) the assets of Respondents BTR Group ("**BTR**"), Mikhail Belyak ("**Belyak**"), Igor Rempel ("**Rempel**"), Anastasia Belyak ("**Anastasia**"), Garri Rempel ("**Garri**"), and the Cyprus-based Respondents (who are named for the purpose of safeguarding assets and records, for discovery purposes and for asset tracing orders[1], into the hands of persons and entities other than BTR, Belyak and Rempel)[2] (hereinafter, the "**Defendants**") and/or (b) the assets of any person or entity holding them on behalf of BTR, Belyak and Rempel[3], to enforce the Moscow Court Judgments, listed in the Melnichenko

---

[1] Including the adjudication of disputes concerning title and/or beneficial ownership as well as *in personam* jurisdiction, fraudulent transfers and *alter ego* liability.
[2] The Cyprus-based Respondents include Elianos Holdings Limited ("**Elianos**"), Moonsky Limited ("**Moonsky**"), Pacato Limited ("**Pacato**"), Eneroc Enterprises Limited ("**Eneroc**"), Ipirex Capital Limited ("**Ipirex**"), Plantrust Services Limited, Plantrust Secretarial Limited, TFME Limited, Trident Trust Company (Cyprus) Limited, M.P. Multi-Count Services Limited, S.I. Cylawservice (Nominees) Limited, Nicos Hadjinicolaou, Stelios Ieronimides and Artemis Stylianou.
[3] Lake Holding has asserted that Elianos, Moonsky, Pacato, Eneroc and Ipirex are owned and controlled by Belyak and Rempel and, on the *ex parte* described in the evidence herein, the Cyprus court made freezing and document

Declaration (collectively, the "**Judgments**") in favor of Lake Holding and against BTR, Belyak and Rempel;

(ii)     attachment and garnishment proceedings in Cyprus, France, Monaco or any other jurisdiction in which Defendants' assets may be located; and

(iii)    the Cyprus, French and Monegasque proceedings, and any other potential proceedings, which require adjudication of ownership issues related to assets, *in personam* jurisdiction, fraudulent transfers and *alter ego* liability.  As set forth in the Melnichenko and Benaur MTD Declarations[4], Defendants have set up a complex scheme of companies across different jurisdictions that include the U.S., BVI, Cyprus, France, Monaco, Russia, Belize and potentially other places, and have created a series of complex mosaics and ownership structures that need to be unraveled through international discovery;

(iv)    because the Cyprus court has already issued Interim Freezing Orders (*see* Benaur Decl., Exhibit J, Melnichenko Decl. Exhibit 3, Nicolaou Decl., Exhibit 2), which apply worldwide against Defendants, the requested discovery is also needed to determine whether the Defendants have complied with such orders, or as suspected, they have not;

---

preservation orders covering these companies and the other parties listed in footnote 2 above.  The use of corporate entities and physical persons is further set out in Melnichenko Decl., ¶28 and Exh. 11.

[4] Filed in the Florida case no 2019 – 35660 – CA – 1 and exhibited to the Benaur and Melnichenko Declarations herein respectively.  For purposes of brevity, the exhibits and orders attached to the Melnichenko and Benaur MTD Declarations are not being attached to this application but shall be provided upon request.

(v)     additional contemplated litigation against Anastasia, Margarita Belyak
        (**"Margarita"**), Garri and others[5] who assisted the judgment debtors in their
        fraudulent schemes and likely conversions (*see* Melnichenko Decl., ¶ 10);

(vi)    further potential asset tracing litigation[6] in Switzerland consequent upon the
        disclosures of account information made by, for example, UBS (as defined below)
        and Credit Suisse; and

(vii)   further proceedings in Russia, principally claims for interest on the debts, as set
        forth in the Melnichenko Decl, ¶23.

Through its international litigation efforts, Lake Holding discovered that Defendants
planned for years to evade their liabilities to Lake Holding.  These liabilities have matured into
the Judgments and the debtors have been shifting their assets and company ownership to
nominees and alter egos[7]. Lake Holding is aware that Defendants and some or all of the persons
and entities connected to them (**"the Related Parties"** as defined below) transacted extensive
international business in U.S. Dollars. This is because, for example, the payments that Lake
Holding made to defendant BTR under the loan agreements were all in U.S. Dollars, sent to
defendant BTR's account with UBS AG in Zurich, Switzerland (**"UBS"**) – and repayments to
Lake Holding were also made by BTR and on its behalf in U.S. Dollars.

Evidence has also been uncovered that at least one of the debtors (Belyak) has **personally**
purchased millions of dollars in commercial and residential real estate in Florida, in U.S. dollars
(but he avoids repayment obligations under the Judgment against him in favor of Lake Holding).

---

[5] Such as Artem Eranov (aka Yeranov) (**"Eranov"**), Dmitry Kim (**"Kim"**) and Grigoriy Kochergin (**"Kochergin"**), Tamara Nikulina (**"Ms Nikulina"**) and Yulia Rempel (aka Shvartsman) (**"Yulia"**) – as well as, for example, corporate entities listed below as **"Related Parties"**.
[6] Including the adjudication of disputes concerning title and/or beneficial ownership as well as *in personam* jurisdiction, fraudulent transfers and alter ego liability.
[7] *See*, for example, Benaur MTD Decl. ¶¶ 5 to 9, 37 to 46, 52 and 53; *see* also generally the facts relating to companies and their activities set out in the Melnichenko MTD Decl.

As described in the Melnichenko Decl. ¶ 28, the majority of the corporate entities connected to

Belyak and Rempel (and those close to them – included within the definition of **"Related**

**Parties"**) have the following, *inter alia*, denominated in U.S. Dollars: authorized share capital

and issued share capital, currency of bank accounts, currency of the declared financial resources

of the UBOs (the "supposed" ultimate beneficial owners) and currency of transactions and

obligations of the companies. Thus, Lake Holding should be allowed to locate financial trail of

Defendants' activities (and of those assisting them) through discovery of U.S. Dollar financial

activities. This U.S. Dollar information is critical in seeking to enforce the Judgments against

Defendants in the various proceedings mentioned above.  Such enforcement will inevitably

require the adjudication of disputes concerning title and/or beneficial ownership as well as *in*

*personam* jurisdiction, fraudulent transfers and alter ego liability. It may also expose other claims

– such as conversion, for example.

Lake Holding intends to use the requested discovery to investigate, locate, and ultimately

bring proceedings (either in the existing Foreign Proceedings or elsewhere) to satisfy the

Judgments against the assets of Defendants inside or outside of Cyprus, France, and Monaco or

in relation to the following entities that Lake Holding believes are or were "substantially

connected," a fraudulent transferee or, or successor in interest to, or an alter ego of Defendants

(the "**Related Parties**")[8], including the following, (not listed in order of importance):

- Antrim Partners Inc (Seychelles) (**"Antrim"**), Artego Holdings Limited (**"Artego"**) (BVI), Belleview United Corp (**"Belleview"**) (BVI), Bervist Enterprises Limited (**"Bervist"**) (Belize), Carmen Management Limited (**"Carmen"**) (BVI), Clevedon Management Limited (**"Clevedon"**) (BVI), Kendalmac Services Limited (**"Kendalmac"**) (BVI), Omega Trading Group Corp (**"Omega"**) (Belize), Sharleen Global Intertrade Inc (**"Sharleen"**) (BVI), Terton

---

[8] Because discovery is proceeding on a separate track in the Florida litigation against the Belyak defendants (not Rempel or BTR), Lake Holding has targeted the discovery sought to relevant evidence in aid of its current non-U.S. proceedings as well as other possible non-US proceedings.  Discovery is already in progress in the Florida proceedings.

> Alliance Limited (**"Terton"**) (BVI), Watson Invest & Finance Limited (**"WIFL"**) (BVI), Margarita, Larisa Rempel (**"Larisa"**), Yulia, Eranov, Kim, Kochergin, Ms Nikulina, Callison Developments Limited (**"Callison"**) (BVI), Rayvin Enterprises Limited (**"Rayvin"**) (BVI), Pelotas Services Limited (**"Pelotas"**) (Cyprus), Opcan Limited (**"Opcan"**) (Cyprus), Sargent Alliance Limited ("Sargent") (BVI) Stretkato Trading Limited (**"Stretkato"**) (Cyprus), Subgreen Operations Limited (**"Subgreen"**) (Cyprus), Watson Invest & Finance Limited ("WIFL") (Cyprus), Prosperity LLC, Mytischi Plaza LLC, Mytischi Plaza Development LLC, Baltia Mall LLC and Krasnogorsk Development LLC (the last five all being Russian).

*See* Melnichenko Decl., ¶ 28.  Lake Holding is primarily seeking discovery from specific banks that have direct links to the Individual and Entity Defendants in the Cyprus actions and are known to have been involved in transactions directly at issue:

(a) **UBS**

This bank held/holds accounts for BTR,*[9] Terton, Carmen,* Pelotas, Belleview,* Callison, Kendalmac, Opcan, Sargent, WIFL, and (b) given the apparently close connections between the Belyaks and UBS, it is likely to hold/have held accounts for: Belyak,* Margarita,* Anastasia,* Kochergin, Eranov, Artego and Stretkato.  Lake Holding sent $90 million in payments to BTR's UBS account from 2012 to 2014. *See* Melnichenko Decl., **Exhibit 10** (copies of bank statements showing payments sent to the UBS account).  Lake Holding is requesting authorization to subpoena UBS for bank records showing, inter alia, where this money was disbursed from 2012 to present.  It also appears that UBS has been the bank of choice for Belyak and persons and entities connected with him.  *See* Melnichenko Decl. ¶ 28 for connections to UBS.

(b) **Credit Suisse** in various locations

This appears to have been the bank of choice for Rempel and persons and entities connected with him. This bank holds at least one account for Larisa and it may hold/have

---

[9] "*" denotes a banking connection that is quite possibly/likely to be active.

held accounts for: Antrim,* Omega,* Belleview,* Bervist, Subgreen, Rempel,* Garri,* Yulia, Ms Nikulina and Kim.  *See* Melnichenko Decl. ¶ 28 for connections to Credit Suisse.

(c) **Lombard Odier Darier Hentsch & Cie (aka Banque Lombard Odier & Cie AG) ("Lombard")**

This bank is known to have held accounts for Pacato and Stretkato, and Pacato made payments to Lake Holding on behalf of BTR (*see* Melnichenko Decl. ¶ 26).

(d) **CIM Banque SA ("CIM")**

This bank was used to make payments on behalf of BTR to Lake Holding but the identity of the account holder has not been ascertained (*see* Melnichenko Decl. ¶ 26).

(e) **Societe Generale / SG Private Bank in Monaco**

This bank held an account for Kendalmac operated by Kim (*see* Melnichenko Decl. ¶ 28) and might hold / have held an account for Kim himself.

(f) **PJSC Sberbank ("Sberbank")**

This bank advanced a loan to Mytischi Plaza LLC which appears on the organizational chart.  *See* Melnichenko Decl. ¶ 30.  As the Melnichenko Decl. makes clear, Sberbank lent $146 million to Mytischi Plaza LLC which was lent on to Kendalmac (BVI), Pacato (Cyprus), Prosperity LLC (Russia) and Baltia Mall LLC (Russia).  Lake Holding seeks to investigate the redirection of the borrowing from Sberbank to the other companies, all of which have connections to the dealings between Belyak's and Rempel's companies and Lake Holding.

(g) **Kookmin Bank (of Korea) ("Kookmin")**

One payment was made to Lake Holding on behalf of BTR but the identity of the account

holder has not been ascertained.  *See* Melnichenko Decl., ¶ 26 and Exh 10.

(h) **Bank of America N.A. ("BoA")**

Known to have conducted transactions for Defendant Belyak and Related Party Carmen

Management Ltd (BVI) (Benaur Decl. Exh. F).

(i) **Citibank N.A. ("Citibank")**

Known to have conducted transactions for Defendant Belyak and Related Party Sargent

Management Ltd (BVI) (*Id*.)

(j) **Merrill Lynch Capital Corporation ("Merrill Lynch")**

Merrill Lynch was involved in the financing described in Melnichenko Decl., ¶ 29. Lake

Holding seeks to investigate the use of the financing and the dealings between Belyak's

and Rempel's companies and Lake Holding.

(k) **BSI SA, Lugano, Switzerland ("BSI")**

The connection with BSI has just come to light <u>as a result of document production in the</u>

<u>Belyak Florida litigation.</u>  BSI appears to have held an account for Medusa Enterprises

Holding in respect of which there was a wire transfer for $19,975 to either Margarita or

Anastasia Belyak in January 2012 as shown on the spreadsheet attached to Benaur Decl.,

**Exhibit N.**  BSI has become part of EFG International and there is an office in Miami,

Florida.

(l) **Union Bancaire Privee CBI-TDB, Geneva ("UBP")**

<u>This connection has also just come to light as a result of document production in the</u>

<u>Belyak Florida litigation.</u>  UBP appears to have held an account for Anastasia in respect

of which there was a wire transfer for $449,975 to either Anastasia or Margarita Belyak

in May 2012 as shown on the spreadsheet attached to Benaur Decl., **Exhibit N.**  UBP

Asset Management LLC has an office in New York City.

Lake Holding wishes to investigate whether and what US Dollar payments have passed through

the banks listed above for Defendants Belyak and Rempel or persons and entities connected with

them (e.g. Related Parties or the other Defendants).  Although Lake Holding has attempted to

"allocate" entities and persons to specific banks, it respectfully asks that all the banks should

search their systems for accounts linked to the names specified – in view of the use of digital

records, this should not be an onerous task.

The prospects of obtaining further information in Russia are limited, especially as the

jurisdiction of the Russian Federal Bailiff Service (**"RFBS"**), which investigates and levies

execution on assets, is limited to the borders of the Russian Federation.  It is also obvious that a

large part of Rempel's and Belyak's joint and individual empires are located – or have their

holding structures located – outside Russia.  *See* generally Melnichenko Decl.  It is impracticable

to obtain this information anywhere but in this District, and given the importance of moving

quickly before Defendants and their helpers scramble the mosaic again, Lake Holding

respectfully requests that this Court permit this discovery.

Under the circumstances, the following categories of evidence will be relevant, important

and useful to Lake Holdings' claims in the Foreign Proceedings, all of which evidence

(principally expected to be documents) is located and/or accessible in the United States:

i.   locating Defendants' bank accounts;
ii.  locating Defendants' assets;
iii. locating Defendants' counterparties and relevant third parties assisting them;
iv.  locating Defendants' trading partners;
v.   identifying whether Defendants have conveyed its or their assets to one or more of the
     Related Parties (or any other persons or entities) before or during the pendency of the
     Foreign Proceedings;

vi.     identifying whether one or more of the Related Parties (or any other persons or entities) have succeeded Defendants in dealing with Defendants' counterparties and/or trading partners, or are acting functionally as Defendants' paying and/or payment agent for the transaction of Defendants' business before or during the pendency of the Foreign Proceedings;

vii.    identifying whether one or more of the Related Parties (or any other persons or entities) have received Defendants' assets under circumstances which suggest that Defendants has been controlled and/or dominated by (or conversely controls and/or dominates) one or more of the Related Parties before or during the pendency of the Foreign Proceedings;

viii.   locating the Related Parties' bank accounts or those of any connected persons or entities;

ix.     locating the Related Parties' assets or those of any connected persons or entities;

x.      locating the Related Parties' counterparties or those of any connected persons or entities; and

xi.     locating the Related Parties' trading partners or those of any connected persons or entities.

Pursuant to 28 U.S.C. § 1782 ("Section 1782"), an applicant may be granted discovery in the United States in aid of a reasonably contemplated foreign proceeding if: (i) the applicant is an interested party to the contemplated proceeding; (ii) the individual or entity from which information is sought resides or is found within the judicial district in which the applicant's application has been brought; and (iii) the information is located in the United States. As discussed herein, Lake Holding's 1782 Application seeks discovery in aid of the Foreign Proceedings satisfies all of the requirements of Section 1782 and the Supreme Court's *Intel* discretionary factors. It is also respectfully submitted that the facts of this matter demonstrate that discovery concerning Defendants' U.S. Dollar activities is both relevant and crucial to Lake Holding in connection with the Foreign Proceedings and enforcement of the Judgments.

## II. JURISDICTION AND VENUE

Jurisdiction is proper pursuant to Section 1782 as this Application is for discovery involving documents from Banks located within the Southern District of New York. The discovery is necessary to assist Lake Holding in, for example, the Cyprus proceedings, as explained in the supporting declarations of Melnichenko and Nicolaou.  This discovery is also

needed to adjudicate matters relating to jurisdiction, title, beneficial interests, fraudulent transfers, alter ego liability and potential additional claims (such as conversion and aiding and abetting claims) contemplated to be brought in Cyprus and elsewhere against not only the direct defendants in the Cyprus proceedings, but against the Related Parties and any other relevant persons or entities in any jurisdiction. Lake Holding is a foreign business entity organized under the laws of a foreign state (BVI). Venue in the Southern District of New York is appropriate pursuant to Section 1782 because the discovery is being sought from corporations within this judicial district, along with the documents presently located and/or accessible in this jurisdiction.

## III. FACTUAL BACKGROUND [10]

From 2012 to 2014, Lake Holding lent a total of US$ 90 million to BTR, a Cyprus company stated by Mr. Mikhail Belyak and Mr. Igor Rempel to be owned and controlled by them.  *See* generally Melnichenko Decl.  Mr. Belyak (and Mr. Rempel) gave personal guarantees in connection with the loans.

BTR holds at least one account at UBS in Zurich and it was to this account that Lake Holding paid the loan advances under the loan agreements.  Attached to the Melnichenko Decl., Exh. 9, are copies of the front pages of the loan documents and the pages in the documents showing BTR's account details at UBS AG in Zurich, Switzerland; the relevant pages of the first loan agreement are in English and Russian whereas the remainder are in Russian, as well as copies of the statements confirming wire transfers made by Lake Holding to BTR's UBS account.  Before the loans and guarantees went into default, and in respect of sporadic payments thereafter, payments by BTR appear to have been made to Lake Holding from BTR's UBS

---

[10] The facts giving rise to this Application are set forth in greater detail in the Melnichenko Decl., the Benaur Decl. and Nicolaou Decl., and exhibits thereto, especially the Benaur and Melnichenko MTD Declarations which are exhibited.  For the sake of clarity, a brief background of the Judgments and related proceedings is provided here.

account and Pacato's account at BLOC and an account at CIM.  *See* Melnichenko Decl., Exh 10.
These payments were made in U.S. Dollars.  *See id.*

BTR, Mr. Belyak and Mr. Rempel all defaulted on their loan and guarantee obligations at
the end of September 2014 and, to cut a long story short, Lake Holding obtained final and
enforceable Russian judgments against them in various Russian proceedings between 2017 and
2020. *See id.*

On November 7, 2020, Lake Holding commenced an action in the U.S. District Court,
Southern District of Florida (Case No. 19-cv-24629-PCH) asserting claims against Mikhail
Belyak, together with his wife Margarita and daughter Anastasia, and certain companies that
they formed in Florida, for fraud, judgment recognition under Florida's Foreign Money
Judgments Recognitions Act, fraud, fraudulent and other related claims. Once challenged on the
basis of subject matter jurisdiction by the defendants, two cases were refiled in Florida state
court.[11]

In the first action in Florida state court (Case No. 2019-035235-CA-01), Lake Holding
filed the Russian judgments for domestication under Fla. Stat. 55, Foreign Money Judgment
Recognitions Act (the "**Domestication Action**").  In the second action, Lake Holding asserted
claims for fraudulent transfer, alter ego liability, unjust enrichment and related civil claims

---

[11] Back then, Belyak, and his wife Margarita and daughter Anastasia, argued, in their motion to dismiss for lack of
subject matter jurisdiction, that the federal court could not exercise diversity jurisdiction because they averred,
through declarations, not to be residents of Florida. Judge Huck instructed undersigned counsel to re-file in state
court unless good reason could be shown to disprove the defendants statements under oath. Such proof was recently
obtained in disclosures in response to state court proceedings in Florida – for example, the Bal Harbor
Condominium Association disclosed documents that Belyak, together with his wife and daughter, have been and still
are listed as RESIDENTS at this lavish Miami apartment that they own. *See* Benaur Decl., Exhibit G. It was also
discovered that Belyak had his Rolls Royce registered at the Bal Harbor apartment since 2012 and then transferred it
to another individual **the next day after the TRO was issued.**  The car is still registered and believed to be garaged
there.  Evidence from the Bal Harbor Condominium Association shows that **in March 2020, Belyak and
Margarita sent out clothing to be dry-cleaned and that it was delivered back.** *See id.*  One does not usually
send out dry cleaning and receive it completed at an address other than an habitual residence.

against Mikhail, Anastasia and Margarita Belyak, and certain companies that they own in Florida, through which they collectively purchased over $22 million in real estate in Florida in 2015 and 2016 (the "**Fraudulent Transfer Action**"). *See* Benaur Decl., Exh. A (Amended and Supplemental Complaint).

On October 6, 2020, the Florida state court entered Final Judgment against Mikhail Belyak in the total amount of $36.1 million. *See* Benaur Decl., Exh. B. The Fraudulent Transfer Action is currently proceeding in state court, and the parties are scheduled to argue over the Defendants' motions to dismiss for, *inter alia, forum non conveniens* and lack of personal jurisdiction. On October 21, 2020, Lake Holding filed opposition to the motions to dismiss, showing documentary evidence of defendants Belyak's lies to the Court, both in terms of residence in Florida and debtor Belyak *personal* purchases of over $15 million of real estate in Florida in 2015-2016 and his prima facie fraudulent transfers to his wife and daughter's LLCs. Since that filing further evidence has come to light regarding the purchases of the Florida real estate and the Belyaks' undoubted residence in Florida. Belyak has compounded his dishonesty and lying in the Fact Information Sheet served on November 20, 2020 in which he lies about his and his family's Florida residence and the extent of his and his family's assets. *See* Benaur Declaration, Exhibits D through I.

**Lake Holding has not pursued any claims in the U.S. against BTR or Igor Rempel or any of the other Entities and Persons cited above due to lack of jurisdiction, thereby necessitating this application.** *See* Melnichenko Decl. Lake Holding has begun to receive documents in response to various subpoenas sent in Florida. The documents provide damning evidence against Mikhail Belyak, one of the debtors. Specifically, as discussed in further detail in the Benaur Decl., the documents show that Mikhail Belayk *personally* entered into a purchase

agreements to buy commercial and residential real estate properties in Florida for over $22 million in 2015 and 2016 (after his default on his personal guaranty to Lake Holding and in the same year as the litigation was filed against him in Russia that led to the Judgments), personally paid deposits for the properties of close to $4 million (and likely more), and then transferred these properties to specially set up limited liability companies owned by his wife and daughter – all in the same year, i.e. 2016, when the litigation against him (that led to the $36 million judgment against him) commenced in Russia.  These documents also show that the money sent was in U.S. dollars and Bank of America was among the banks used for these prima facie fraudulent transfers.  *See* Benaur Decl., Exh. E.  Although Lake Holding anticipates obtaining additional disclosures as part of the Florida state court litigations, as it affects the Belyak defendants, this current 1782 application is required to obtain the disclosures with respect to each of each of the Defendants, including Rempel and BTR, which are not currently subject to litigation in the U.S., (and Related Parties) but are part of the Cyprus, French and Monaco proceedings, and may be made parties to proceedings elsewhere.  *See id.*

On or about March 10, 2020, Lake Holding filed three cases ("**General Applications**" in the District Court of Nicosia, Republic of Cyprus (the "**Cyprus Court**"): General Application No. 82/20, General Application No. 83/20, and General Application No. 84/20 (collectively, the "**Cyprus Actions**") in Nicosia in Cyprus against, in total, the Defendants.  In each case, it has sought recognition and enforcement of the judgments in Cyprus under the terms of the bilateral treaty between the Russian Federation and Cyprus.  *See generally,* the Nicolaou Decl.

On the filing of the three cases, Lake Holding also sought *ex parte* interim orders (i) to freeze the assets of the corporate respondents and physical persons, (ii) to preserve the

companies' records and (iii) for other relief including disclosure and tracing orders.  Copies of the interim orders are annexed to the Benaur and Melnichenko Declarations.

The interim orders and the remaining court papers were served on the Cyprus-based respondents and, as of today, the Cyprus based respondents in the BTR and Rempel actions have served oppositions to the making of the interim orders[12].  Those oppositions raise all manner of defenses, none of which is valid.  In particular, Lake Holding maintains that Belyak and Rempel have procured that a junior lawyer in the one firm acting for all Cyprus based respondents (Stelios Ieronymides and Associates LLC (**"SIAL"**)) has sworn an affidavit asserting that Belyak and Rempel have nothing to do with any of the Cyprus company respondents and (by implication if not by express statement) any of the companies in the BVI or other jurisdictions such as Belize (Central America) which have been identified in Lake Holding's affidavit evidence or in the exhibits thereto.  *See* Nicolaou Decl., ¶12.

Lake Holding has pursued efforts to enforce the Judgments and obtain disclosure of information in Russia, as well as in various other countries, including in Cyprus, France, Monaco, the BVI, Belize and Canada.  After the Cyprus Court granted the *ex parte* interim orders on March 27 and 30, 2020, Lake Holding filed an *ex parte* application in the BVI on April 9, 2020 seeking a disclosure order against the local service providers for eleven (11) BVI companies which Lake Holding believes to be or to have been owned and controlled by Belyak and/or Rempel.  The BVI judge granted the order for the production of papers relating to the

---

[12] Belyak, Rempel, Anastasia and Garri have not accepted service of process through the Cyprus lawyers representing the companies allegedly owned and controlled by Belyak and Rempel and attempts at service have been made by diplomatic means in Russia.  These have been unsuccessful and Lake Holding has asked the Cyprus courts for orders for substituted service on third parties and for such service to be deemed effective service on Belyak, Rempel, Anastasia and Garri.  Such orders were made in respect of all except Garri between 21 and 29 October 2020 and the proceedings have now been served on these three parties pursuant to their terms.  A further application will be made in respect of Garri using contact information emerging from the Canadian production of documents.

companies, which included a "gagging order" preventing the respondent service providers revealing the making of the order for a limited period of time.  Copies of the BVI order (as well as the ensuing Canada and Belize orders) are attached as part of **Exhibit K** to the Benaur Decl.; *see also* Nicolaou Decl.

On August 20, 2020, Lake Holding filed an *ex parte* application in Canada for a disclosure order against Unitrust Corporate Services Limited, now known as Santorini Global Limited and an affiliated company called Unitrust Capital Corp.  The judge also made a "gagging order" in terms similar to the order made in the BVI.  See Benaur MTD Decl., Exh C to the Benaur Decl. (discussing these orders).  Lake Holding filed a further ex parte application with the court in Belize for a disclosure order to be made against Bervist's service provider there and obtained similar relief.  *See id.*

Large quantities of papers were produced pursuant to these disclosure orders from companies registered in BVI, Canada and Belize, but to date, Lake Holding has not obtained detailed banking information for the subject companies and individuals, although there are various references to bank accounts being held at UBS and Credit Suisse [*See id; see also* Melnichenko Decl.], and as noted above, Lake Holding has also gathered evidence of Citibank and Bank of America's processing of transactions for or on behalf of Defendant Belyak.  Because these banks are located in the U.S. and transactions were made in U.S. dollars, Lake Holding now brings the within application.

## IV. ARGUMENT

### A. 28 U.S.C. § 1782 PROVIDES FOR DISCOVERY IN AID OF REASONABLY CONTEMPLATED FOREIGN ACTIONS

28 U.S.C. § 1782(a) expressly authorizes the relief sought hereunder:

The District Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

This Court has broad discretion to grant the relief under the circumstances. *In re Application of Aldunate,* 3 F.3d 54, 62 (2d Cir.), *cert, denied,* 510 U.S. 965 (1993).

## B. LAKE HOLDING SATISFIES THE STATUTORY REQUIREMENTS

The U.S. Supreme Court has interpreted Section 1782 as having a broad application. *Intel Corp.* v. *Advanced Micro Devices, Inc.,* 542 U.S. 241, 259 (2004). The Supreme Court adopted a broad and liberal interpretation of the statute and provided guidelines for the future application of the statute by federal district courts. *Id.* Lake Holding satisfies each of the requirements of Section 1782 and those set forth by the Second Circuit in *Aldunate. Id.* In *Aldunate,* the Second Circuit stated of Section 1782 that:

[T]he statutory language is unambiguous in its requirements: (1) the person from whom discovery is sought must reside in be found in the district of the district court to which the application is made, (2) the discovery must be "for use in a proceeding in a foreign or international tribunal," and (3) the application must be made "by a foreign or international tribunal" or by "any interested person."

3 F.3d at 58 (quoting 28 U.S.C. § 1782).

Thus, the Court may enter an order allowing discovery for use in the Foreign Proceedings, as well as any other recognition and enforcement action which Lake Holding might commence as a result of the information obtained. Specifically, Lake Holding is an interested person to the Foreign Proceedings; the persons or entities with possession, custody and/or control of the discovery sought reside in or are found within this District; and the evidence is sought for use in the Foreign Proceedings, which are or will be held before a foreign tribunal.

### 1. Lake Holding, the Applicant, Is an Interested Person to the Foreign Proceedings

Lake Holding is the petitioner and claimant in the Foreign Proceedings, including but not limited to the Cyprus proceedings. As Lake Holding is, or will be, a party to all and any Foreign Proceedings, it is clearly an "interested person" as that term is used in Section 1782. *See In re Application of Malev Hungarian Airlines,* 964 F.2d 97, 101 (2d Cir.), *cert, denied,* 506 U.S. 861 (1992).[13] The Supreme Court recognized the definition of an interested party to be any person who "possesses] a reasonable interest in obtaining [judicial] assistance." *Intel,* 542 U.S. at 256. Here, Lake Holding is pursuing Foreign Proceedings arising out of this dispute. Lake Holding possesses a reasonable interest in obtaining the assistance requested.

As the Melnichenko Decl. states (*see* ¶ 23) Lake Holding has no intention to seek the recovery of more than 100% of the judgments obtained against BTR, Belyak and Rempel together with any further sums properly due, principally interest under Russian law or the law of the places where the judgments have been recognized.

### 2. The Persons or Entities with Possession, Custody and/or Control of the Discovery Sought Reside in or Are Found Within this District

A company is found where it is incorporated, headquartered, or where it is engaged in "systematic and continuous activities." *In re Godfrey,* 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (citation omitted).  Further, a respondent is found if physically present in the district. *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) (respondent is "found" if physically present in the district).  The New York banks from which discovery is sought "reside" or are "found" in this Judicial District within the meaning of the above definition as each subject bank is physically present and engaged in systematic and continuous activities here.

---

[13] Corporations and business entities qualify as a "person" under Section 1782, as the United States Code defines a "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1.

Lake Holding seeks the production of documents by the above-referenced Banks, and each bank has an office in the District and maintains the records requested. Benaur Decl., ¶3. Moreover, the Banks have responded to past subpoenas which sought similar records, without objection, as early as two weeks after receipt of the subpoena. *Id.* Lake Holding anticipates serving the New York Banks with subpoenas in this District upon the issuance of an order by the Court authorizing the discovery assistance requested.

In previous cases seeking similar discovery from intermediary banks under § 1782, the Court noted that "New York Banks routinely receive and comply with similar subpoenas issued pursuant to 28 U.S.C. §1782. In response . . . the Banks have searched their electronic transaction databases for the relevant terms timely provided counsel with sample electronic spreadsheets listing the basic information relating to any wire transfers that satisfy the search parameters." *In re Application of Hornbeam Copr.*, 2014 WL 8775453, *1 (S.D.N.Y. Dec. 24, 2014). That same reasoning logically applies to banks that handled direct transfers, as well as banks that acted as intermediary or correspondent banks. Applicant here seeks discovery from banks located in this District which were reasonably likely to have been used as direct transfer banks by Defendants and/or Related Parties.

This Court has consistently granted similar 1782 applications against these banks.  *See, e.g. In re Application of Galaxy Energy and Resources Co. Pte Ltd.,* Civil Action No. 19-MC-287-LTS (SDNY 2019) (authorizing discovery, pursuant to Section 1782, with regard to BoA, Deutsche, UBS, Barclays, Societe Generale, Wells Fargo Standard Chartered and other banks*, In re Ex Parte Application of Tiberius Group AG, 19-MC-467 (SDNY 2020) (same), Christof Pfaff v. Deutsche Bank AG, 20-MC-25 (SDNY 2020) (same).* The Second Circuit has also recently clarified, that Section 1782 may reach any company subject to personal jurisdiction in the U.S.,

even if the documents requested are physically located outside the US. *See In re del Valle Ruiz et al.*, 939 F. 3d 520 (2d Cir. Oct. 7, 2019)*; In re Accent Delight Int'l v. Sotheby's,* 791 Fed. App'x 247 (2d Cir. 2019) (citing del Valle Ruiz and rejecting an argument that discovery pursuant to Section 1782 does not extend extraterritorially)*; Att'y Gen. of British V.I. v. Hyman,* No. 19-MC-164, 2020 WL 2615519, at *5 (D.D.C. May 23, 2020) (granting a Section 1782 application; citing del Valle Ruiz). *See* Benaur Decl., Exh. L (attaching the cases).

### 3. Discovery Is Sought for use in the Foreign Proceedings, Which Are or Will Be Held Before One or More Foreign Tribunal

The discovery sought is "for use in a proceeding in a foreign or international tribunal." *Aldunate,* 3 F.3d at 58 (quoting 28 U.S.C. § 1782). "The 'proceeding for which discovery is sought under § 1782(a) must be within reasonable contemplation, but need not be 'pending' or 'imminent.' ' " 542 U.S. at 243 (citation omitted). The Second Circuit has interpreted "a proceeding" as used in § 1782 "to mean a proceeding in which an adjudicative function is being exercised." *Lancaster* Factoring *Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996). The Cyprus Actions are before the Cyprus Court, the court which has jurisdiction over civil matters of this nature. Thus, for example, the Cyprus Actions are ongoing adjudicatory proceedings. The contemplated future actions would also be before a court with jurisdiction over the actions, which might include Cyprus but could extend to Switzerland, and will also constitute adjudicatory proceedings.

U.S. courts have previously granted applications for discovery under Section 1782 for use in Cypriot court proceedings, which are indisputably "adjudicative" in nature. *See Weber v. Finker*, 554 F.3d 1379, 1381 (11th Cir.), cert. denied 558 U.S. 816 (2009); *In re Bank of Cyprus Public Co. Ltd.*, 10-mc-00294-SRC, slip op. at *2 (D.N.J. Jan. 13, 2011); *see also In re Bank of Cyprus Public Co. Ltd.*, 10 Misc. 23, 2011 WL 223168, at *2 (S.D.N.Y. Jan. 21, 2011) (agreeing

that it was appropriate to grant the requested discovery for use in Cypriot litigation, but determining that such discovery would be obtained through a Section 1782 application brought in New Jersey). *See also JSC MCC EuroChem v. Chauhan*, 2018 WL 3872197, 17-mc-00005, *11- 12 (M.D.Tenn. Aug. 8, 2018) allowing discovery pursuant to Section 1782 in aid of foreign proceedings in Cyprus in which the petitioner was seeking from the Cyprus court a worldwide freezing order to prevent the defendants in several other foreign proceedings from hiding assets that could be available to satisfy potential future judgments).

Similarly, in the Cyprus proceedings where Interim Freezing Orders are currently in place, the foreign proceedings relate to the recognition and enforcement of a judgments, and, in enforcing the judgments, the proceedings likely will require the foreign court to examine and adjudicate ownership issues related to assets, *in personam* jurisdictional issues related to the judgment-debtors' presence in a particular jurisdiction, and other issues related whether certain assets have been fraudulently conveyed or can be attached or turned over to satisfy the judgments.  In addition, Lake Holding shall seek discovery to assess whether to seek an adjudication as to whether defendants already violated the Interim Freezing Orders (Benaur Decl., Exhibit K).

Lake Holding has initiated several actions in Cyprus and may well initiate further actions in other jurisdictions after obtaining sufficient discovery from the Banks. In *Intel,* the Supreme Court confirmed a low threshold for satisfying the "foreign or international tribunal" requirement by concluding that the Directorate General (i.e., a governmental investigative body and not a court) is a "tribunal" for the purposes of satisfying the requirements of Section 1782. The Court also stated that "[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial,

criminal, and administrative courts." *Intel,* 542 U.S. at 248. In light of the expansive definition of

the term "tribunal," there is no question that the Foreign Proceedings initiated and contemplated

qualify as "proceeding[s] in [ ] foreign or international tribunal[s]."

Since *Intel,* several District Courts have followed the Supreme Court's ruling that 28

U.S.C. § 1782(a) allows for discovery assistance to proceedings which have not yet been filed.

*See, e.g., In re Wilhelm,* 470 F. Supp. 2d 409, 410-11 (S.D.N.Y. 2007); *In re Marano,* No. 09-

80020, 2009 WL 482649, *2 (N.D. Cal. Feb. 25, 2009) (in the civil proceeding context). Lake

Holding has demonstrated that numerous actions are pending and within reasonable

contemplation. The discovery sought hereunder is critical to pending and contemplated actions in

Cyprus, as well as elsewhere. It will be used to determine whether, how and where Defendants

have violated the existing Interim Freezing Orders from the Cyprus Court and also to adjudicate

(in other jurisdictions) the imposition of nominee and alter ego liability on various third parties

who have assisted and are assisting defendants in hiding assets and absconding with over $36

million which should have been used to repay Lake Holding.

### 4. No Other Factors Weigh Against Allowing Discovery

There are no factors which would argue against allowing the discovery. In *Malev,* the

Second Circuit emphasized that the goals of Section 1782 should be considered in deciding

motions brought under the statute. *Malev,* 964 F.2d at 100. These goals of Section 1782 are:

[T]win aims of providing efficient means of assistance to participants in international litigation in
our federal courts and encouraging foreign courts by example to provide similar means of
assistance to our courts.

*Id.* Both these aims will be fulfilled by granting the requested discovery. The discovery sought

will assist Lake Holding in the Foreign Proceedings. More specifically, the discovery sought will

enable Lake Holding to enforce the Judgments, adjudicate violations of existing Cyprus Court

Interim Freezing Orders, and aid in contemplated actions. Thus, the goals of the statute will be accomplished through granting this Application. Thus, based on the above precedent, it must be concluded that a Section 1782 application should be granted given the supporting evidence in the accompanying declarations.

## C. *LAKE HOLDING ALSO SATISFIES INTEL'S DISCRETIONARY FACTORS*

While the *Intel* factors are not exhaustive, the Court stated that a court ruling on a Section 1782 request should consider: 1) whether the person from whom discovery is sought is a participant in the foreign proceeding; 2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; 3) whether the Section 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; 4) whether the discovery requests are unduly intrusive or burdensome. *Intel,* 542 U.S. at 264-65.

Granting Lake Holding's request for relief is consistent with the guidance provided by the *Intel* court as none of the New York Banks will be parties to or participants in the Foreign Proceedings. To date, it has not been possible to obtain the subject bank documents as part of any proceedings to date held in Russia, Cyprus or elsewhere. *See* Benaur Decl. and Nicolaou Decl. Interim Freezing and Document Preservation Orders were obtained and entered by the Cyprus Court in late March 2020 but the Court will only adjudicate on the requests for the disclosure information and/or make an asset tracing orders at a later stage, possibly only in the first half of 2021. Aside from the Cyprus courts' heavy caseloads, the Covid pandemic is interfering with progress. Currently, there are severe restrictions on movement between Limassol (where Lake Holding's lawyers are located) and the court in Nicosia.

The nature of the Foreign Proceedings does not implicate any factor or policy that would weigh against granting this application. Instead, the nature of the Foreign Proceedings and contemplated future actions weighs in favor of Lake Holding's request.  The information sought would also be used in commencing targeted actions rather than a discovery in the pre-trial phase of a dispute on the merits, it is respectfully submitted that granting the assistance requested by Lake Holding would not offend any foreign jurisdiction. Lake Holding is seeking this Court's assistance to locate Defendants' assets because Defendants are actively seeking to preclude Lake Holding's enforcement efforts (having set up structures consisting in "smoke and mirrors" over the years both before and since the defaults). Indeed, Lake Holding has identified entities other than Defendants which have made payments on Defendants' behalf (*see,* e.g. the discussion of payments by Pacato and an unknown party through CIM and Kookmin banks in the Melnichenko Decl.*)*. As Defendants have a history of transacting its business in U.S. Dollars and this District is where Lake Holding can obtain discovery as to Defendants' business transactions, Lake Holding respectfully seeks this Court's assistance to enable discovery in aid of the Cyprus proceedings, both those ongoing and those contemplated.

Finally, the requests are neither unduly intrusive nor burdensome. As discussed above, the key information relevant to the Foreign Proceedings is located in this District. This includes documentation from the Banks. The Banks store this information as a matter of course and it requires little effort for them to produce it in response to such a document request. As noted above, this information is not available to Lake Holding.

**D.** ***THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT FOREIGN DISCOVERY ASSISTANCE***

Under the circumstances, evidence that will be relevant to Lake Holding's claims in the Foreign Proceedings is not available abroad, but is located in the United States and/or in this District (in terms of both documents and witnesses). As such, Lake Holding respectfully requests the Court grant its request for discovery pursuant to Section 1782 to obtain discovery (as is specified in the Application) concerning:

i.    locating Defendants' bank accounts;

ii.    locating Defendants' assets;

iii.    locating Defendants' counterparties and relevant third parties assisting them;

iv.    locating Defendants' trading partners;

v.    identifying whether Defendants have conveyed its or their assets to one or more of the Related Parties (or any other persons or entities) before or during the pendency of the Foreign Proceedings;

vi.    identifying whether one or more of the Related Parties (or any other persons or entities) have succeeded Defendants in dealing with Defendants' counterparties and/or trading partners, or are acting functionally as Defendants' paying and/or payment agent for the transaction of Defendants' business before or during the pendency of the Foreign Proceedings;

vii.    identifying whether one or more of the Related Parties (or any other persons or entities) have received Defendants' assets under circumstances which suggest that Defendants has been controlled and/or dominated by (or conversely controls and/or dominates) one or more of the Related Parties before or during the pendency of the Foreign Proceedings;

viii.    locating the Related Parties' bank accounts or those of any connected persons or entities;

ix.    locating the Related Parties' assets or those of any connected persons or entities;

x.    locating the Related Parties' counterparties or those of any connected persons or entities; and

xi.    locating the Related Parties' trading partners or those of any connected persons or entities.

Obtaining this information will require subpoenas requiring production of U.S. Dollar wire transfer activity of Defendants and the Related Parties, all of which are located in the United States as well as the Banks.

## V. CONCLUSION

In summary, consistent with precedent cited above, the facts in the present matter clearly meet the requirements of Section 1782, and this Application for the Order should be granted.

Date: December 2, 2020
      New York, New York

Respectfully submitted,

**BENAUR LAW LLC**

_____

(www.benaurlaw.com)
George Benaur (GB1224)
43 W 43rd STREET, Suite 225
New York, New York 10036
Cell: (609) 216-6105
Email: george@benaurlaw.com
*Attorneys for Plaintiff*
*LAKE HOLDING & FINANCE S.A.*