UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
IN RE APPLICATION OF                          :
LAKE HOLDING & FINANCE S.A.,
                                                       :          **MEMORANDUM AND ORDER**
                              Petitioner.
                                                       :          20-MC-652 (RA) (KNF)
-----------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Before the Court is Lake Holding & Finance S.A.'s application for "an Order pursuant to

28 U.S.C. § 1782 to obtain discovery in the form of subpoenas to be served on" the following

banks: "UBS AG; Societe Generale / SG Private Bank; Banque Lombard Odier & Cie AG (aka

Lambert Odier Darier Hentsch & Cie); CIM Banque SA; Kookmin Bank (Korea); Credit Suisse;

PJSC Sberbank; Bank of America, N.A.; Citibank, N.A.; Merrill Lynch Capital Corporation;

Union Bancaire Privee CBI-TDB, Geneva; and BSI SA, Lugano, Switzerland (collectively, the

'Banks')." The application is opposed by Mikhail Belyak, Anastasia Belyak, and Margarita

Beliak ("Belyak respondents"), Igor Rempel, Garri Rempel, Yulia Rempel and Larisa Rempel

("Rempel respondents").

**PETITIONER'S CONTENTIONS**

The petitioner asserts that "discovery is sought with respect to documents located in the

United States in this judicial district for use in the following pending proceeding(s)":

(i)      Lake Holding's pending judgment recognition and enforcement proceedings in
         Cyprus which include orders protecting (a) the assets of Respondents BTR Group
         ("BTR"), Mikhail Belyak ("Belyak"), Igor Rempel ("Rempel"), Anastasia Belyak
         ("Anastasia"), Garri Rempel ("Garri"), and the Cyprus-based Respondents
         (collectively, the "Defendants") (who are named for the purpose of safeguarding
         assets and records, for discovery purposes and for asset tracing orders, into the
         hands of persons and entities other than BTR, Belyak and Rempel) and/or (b) the
         assets of any person or entity holding them on behalf of BTR, Belyak and Rempel,
         to enforce the Moscow Court Judgments, listed in the Melnichenko Declaration

1

(collectively, the "Judgments") in favor of Lake Holding and against BTR, Belyak and Rempel;

(ii)    attachment and garnishment proceedings in Cyprus, France, Monaco or any other jurisdiction in which Defendants' assets may be located; and

(iii)    the Cyprus, French and Monegasque proceedings, and any other potential proceedings, which require adjudication of ownership issues related to assets, in personam jurisdiction, fraudulent transfers and alter ego liability. As set forth in the supporting Declarations of Vladimir Melnichenko and George Benaur, Defendants have set up a complex scheme of companies across different jurisdictions that include the U.S., BVI, Cyprus, France, Monaco, Russia, Belize and potentially other places, and have created a series of complex mosaics and ownership structures that need to be unraveled through international discovery;

(iv)    because the Cyprus court has already issued Interim Freezing Orders (see Benaur Decl., Exhibit J, Melnichenko Decl. Exhibit 3, Nicolaou Decl., Exhibit 2), which apply worldwide against Defendants, the requested discovery is also needed to determine whether the Defendants have complied with such orders, or as suspected, they have not;

(v)    additional contemplated litigation against Anastasia, Margarita Belyak ("Margarita"), Garri and others who assisted the judgment debtors in their fraudulent schemes and likely conversions (see Melnichenko Decl., ¶ 10);

(vi)    further potential asset tracing litigation in Switzerland consequent upon the disclosures of account information made by, for example, UBS (as defined below) and Credit Suisse; and

(vii)    further proceedings in Russia, principally claims for interest on the debts, as set forth in the Melnichenko Decl, ¶ 23.

The petitioner contends that "[r]equests for transfer records from intermediary banks are routine and rarely opposed by such banks." The petitioner seeks discovery from the banks "through or from which funds have been transferred by Defendants and their controlled companies from the date the Lake Holding made the first loan to the date hereof. The discovery will assist in determining the use of the Lake Holding's loan proceeds and the potential diversion of the security and repayment funds that were to have been used to repay the Lake Holding's loans, as well as any fraudulent transfers made when the loans were in default." According to the petitioner, the foreign proceedings are "on-going and the discovery sought here is for use in those proceedings and other foreign actions Lake Holding anticipates will be brought." Specifically, the subpoenas seek:

1. Copies of any orders, instructions or wire transfers received from any person or entity (including but not limited to, any payor/transferor bank to a payee/transferee bank) for the benefit or credit of, or with any reference to any of the following entities and persons (hereinafter, the "Transferees"):
   • Mikhail Belyak
   • Anastasia Belyak
   • Igor Rempel
   • Garri Rempel
   • BTR Build To Rent Group Limited
   • Related Party or Related Parties
   • Cyprus-based Respondents or Respondents
   in which the Bank has acted as either as direct transfer bank or as the intermediary or correspondent bank, together with any electronic and/or paper records thereof for the period beginning January 1, 2012 to the present.
2. Copies of any other documents in the possession of the Bank relating to the Transferees, including all documents to be produced pursuant to the annexed Order Granting Lake Holding's Section 1782 Application.

The petitioner asserts that it is an "interested person under Section 1782 because it is the claimant in the foreign proceedings or will be a party to foreign proceedings." The petitioner "has no intention to seek the recovery of more than 100% of the judgments obtained against BTR, Belyak and Rempel together with any further sums properly due, principally interest under Russian law or the law of the places where the judgments have been recognized." The banks to be subpoenaed are found or reside within this judicial district and discovery is sought for use in the foreign proceedings, which are or will be held before one or more foreign tribunals, including in Cypriot court proceedings, where interim freezing orders are in place. In enforcing the judgments, the proceedings will likely require the foreign courts to adjudicate ownership issues related to assets in personam jurisdictional issues related to the judgment-debtors' presence in a particular jurisdiction and whether certain assets have been fraudulently conveyed or can be attached or turned over to satisfy the judgments. The petitioner "shall seek discovery to assess whether to seek an adjudication as to whether defendants already violated the Interim Freezing

Orders." The petitioner maintains that no other factors exist which would weigh against allowing discovery.

Moreover, "the four discretionary factors set out by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241, 264-65 (2004) weigh in favor of granting Applicant's application." None of the banks that will be subpoenaed will be parties to or participate in the foreign proceedings and it has not been possible to obtain documents from those banks in any proceedings held to date in Russia or Cyprus. The nature of the foreign proceedings does not implicate any factor or policy that would weigh against discovery. The petitioner asserts that the information sought would also be used in commencing targeted actions rather than in the pre-trial discovery phase of a dispute on the merits and granting the application will not offend any foreign jurisdiction. The petitioner seeks discovery concerning:

i. locating Defendants' bank accounts;
ii. locating Defendants' assets;
iii. locating Defendants' counterparties and relevant third parties assisting them;
iv. locating Defendants' trading partners;
v. identifying whether Defendants have conveyed its or their assets to one or more of the Related Parties (or any other persons or entities) before or during the pendency of the Foreign Proceedings;
vi. identifying whether one or more of the Related Parties (or any other persons or entities) have succeeded Defendants in dealing with Defendants' counterparties and/or trading partners, or are acting functionally as Defendants' paying and/or payment agent for the transaction of Defendants' business before or during the pendency of the Foreign Proceedings;
vii. identifying whether one or more of the Related Parties (or any other persons or entities) have received Defendants' assets under circumstances which suggest that Defendants has [sic] been controlled and/or dominated by (or conversely controls and/or dominates) one or more of the Related Parties before or during the pendency of the Foreign Proceedings;
viii. locating the Related Parties' bank accounts or those of any connected persons or entities;
ix. locating the Related Parties' assets or those of any connected persons or entities;
x. locating the Related Parties' counterparties or those of any connected persons or entities; and

xi.  locating the Related Parties' trading partners or those of any connected persons or entities.

In support of its application, the petitioner submitted declarations by: (i) Vladimir Vasilyevich Melnichenko ("Melnichenko"), the sole beneficial owner of Lake Holding & Finance S.A., with exhibits; (ii) George Benaur ("Benaur"), the petitioner's attorney, with exhibits; and (iii) Chrysostomos Nicolau ("Nicolau"), the petitioner's attorney in Cyprus, with exhibits.

## BELYAK RESPONDENTS' OPPOSITION

The Belyak respondents assert that "[t]he Second Circuit has made clear that discovery under 28 U.S.C. §1782 is not available in support of foreign post-judgment enforcement proceedings. *See Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998). That is exactly what Lake Holding is improperly attempting to obtain with its application" seeking discovery in support of several judgment enforcement proceedings alleged as pending in Cyprus, France and Monaco.

These various foreign collection proceedings seek the enforcement of a series of judgments entered by a Moscow court in favor of Lake Holding and against Mikhail Belyak, a Russian citizen and Moscow resident (the "Moscow Judgments"). Id. By its own admission, therefore, Lake Holdings' Section 1782 Application must be denied under *Euromepa* and its progeny because the discovery is not being sought for use in an adjudicative proceeding as defined under the statute and case law interpreting the statute. Further, the Section 1782 Application is nothing more than a veiled effort to circumvent two actions commenced by Lake Holding in the State of Florida. In these two actions, the alleged liability on and domestication and enforceability of the Moscow Judgments is being litigated, among other things, and a protective order prohibiting Lake Holding from improperly obtaining the underlying financial information that is the basis of the Section 1782 Application has been issued on the record by the Florida Court (the "Protective Order"). The confidentiality mandate of the Protective Order is a basis for the denial of the Section 1782 Application on its own because, as the Second Circuit has noted, there is no procedure to enforce the confidentiality of discovery obtained pursuant to Section 1782. *Kiobel ex rel Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018), cert. denied, 139 S. Ct. 852 (2019).

The Belyak respondents contend that the application fails to satisfy the mandatory statutory requirements because it seeks discovery to be used in support of post-judgment proceedings, not in a foreign adjudicative proceeding, as required in this circuit.  As "[t]here is nothing adjudicative in nature about Lake Holding's purported plans to seek recognition and enforcement of the Moscow Judgments in other jurisdictions," the post-judgment proceedings alleged to be pending in other jurisdictions show that the instant application is barred by Euromepa. Moreover, "the Cypriot Court has purportedly issued Interim Freezing Orders, Section 1782 Application, at 2 n. 3; therefore, there are no 'contested factual and legal questions' pending or even contemplated to be pending before any foreign tribunal."  The petitioner's conclusory and speculative assertion, without any explanation, that "in enforcing the judgment, the proceedings likely will require the foreign court to examine and adjudicate ownership issues related to assets" is not sufficient to satisfy the requirement that discovery is for use in an adjudicative proceeding.

The Belyak respondents contend that the application does not satisfy the Intel discretionary factors because they "are parties to one or more of the subject foreign proceedings in Russia, Cyprus and Monaco; therefore, Lake Holding can ostensibly – and must properly be required to – obtain all of the discovery it seeks from them in those proceedings since they are parties"; thus, this factor weighs against the application.  With respect to whether the courts in the purported pending or contemplated foreign proceedings will be receptive to a United States court's interference, the petitioner "failed to provide sufficient information or law from the jurisdictions where the purported pending and/or contemplated foreign proceedings are taking place for the Court to analyze this factor."  The petitioner "appears to be intentionally obfuscating the character of the purported pending or contemplated proceedings in those

jurisdictions, and, while seeking relief from this Court, thereby prevents the Court from performing a complete analysis of all of the Intel factors."

Furthermore, the petitioner did not show that it has first attempted to obtain discovery in the foreign jurisdictions. Rather, the petitioner asserts that "it has gathered information and discovery through the Florida Proceedings" but does not state "whether it has requested discovery in the purported pending foreign cases or whether it can." The petitioner "is asking this Court to step into the shoes of the judges in each of the purported foreign proceedings, to apply U.S. discovery principles to matters pending in these foreign tribunals, and to – in effect – govern the discovery proceedings in each of those actions," and the application is devoid of any showing that the petitioner attempted to obtain discovery from the Belyak respondents in the foreign proceedings. The petitioner's lack of interest in pursuing discovery in the foreign proceedings shows an attempt to circumvent the rules of the foreign tribunals.

The Belyak respondents assert that the petitioner seeks overly broad discovery consisting of "every document which might be in existence to aid it in locating, inter alia, all of the respondents' bank accounts, their assets, all counterparties and relevant third parties assisting them, their trading partners, all of the related parties' bank accounts and those of any connected persons or entities." Seeking "essentially every document conceivably related to the Belyak Parties, including privileged financial documents and asset information of the Belyak Parties and unrelated third parties" is unduly intrusive and burdensome. The Belyak respondents maintain that all four Intel factors weigh against granting the application. Alternatively, the court should abstain from exercising jurisdiction in favor of the Florida proceeding under "*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)" because the "Moscow Judgments are the basis of two pending Florida state court

proceedings brought by Lake Holding over one year before Lake Holding initiated this

proceeding, one of which has given rise to a pending Florida appellate court proceeding." "One

of the issues in those proceedings is allegations of fraud by Lake Holding in the recognition and

domestication process; another issue is whether Lake Holding may enforce those judgments

against A. Belyak and Margarita. Surgeon Decl. ¶¶ 8, Ex. 5 at 1-3." "[T]he issue of whether the

Moscow Judgments that are the subject of the foreign garnishment and enforcement actions

referenced in the Section 1782 Application and the extent to which those Moscow Judgments can

reach assets of A. Belyak and Margarita can be recognized is presently being litigated in the

Florida court system." In support of their opposition, the Belyak respondents submitted a

declaration by their attorney Naim S. Surgeon ("Surgeon") with exhibits.

## REPLY TO BELYAK RESPONDENTS' OPPOSITION

The petitioner contends that the Belyak respondents "created a series of complex mosaics

and ownership structures that need to be unraveled – quite likely with court orders that

transactions should be set aside as frauds on creditors – to determine true ownership and also to

determine whether steps have been taken to place assets beyond reach, the propriety of which

must be challenged" and the petitioner "should be permitted to seek evidence in order to

prosecute claims for violation of court orders, especially the worldwide freezing orders granted

in Cyprus a year ago." "The nature of the Cyprus proceedings as adjudicative proceedings is

discussed at length and confirmed by Mr. Nicolaou" in his declaration. The petitioner filed

requests for discovery in Cyprus, which should not be justification for denying the application.

The Belyak respondents failed to provide any valid ground for denying the petition and they

failed to present any evidentiary support for their argument that none of the pending and

contemplated proceedings is adjudicative. The opposing declaration by Surgeon, "a U.S. lawyer

with no involvement in Cyprus, Monaco, Russia, BVI, Belize or Canada proceedings, is not based on any personal knowledge of whether those proceedings shall be or are 'adjudicative'" and his "protestations, absent support from the Belyaks' Cyprus counsel, are baseless." The Court should accept the declaration by Nicolaou in which he "states the issues which arise for determination in the Cyprus proceedings." According to the petitioner,

> *Euromepa* should not be interpreted as applying an additional requirement for Section 1782 that is not found in the text of the statute. *Euromepa* does not per se prohibit discovery in aid of foreign proceedings concerning the recognition and enforcement of a foreign (Russian) judgment. Other courts in this district have granted Section 1782 applications for discovery in aid of recognition and enforcement of judgments and arbitration awards. *See, e.g. In re Clerici*, 481 F.3d 1324 (11th Cir. 2007); *JSC MCC EuroChem v. Chauhan*, 2018 WL 3872197, 17-mc 00005, *11- 12 (M.D.Tenn. Aug. 8, 2018); *In re Stati*, 2018 WL 474999, 15-mc-91059 (D. Mass. Jan. 18, 2018); *See, e.g., In re Frontline Shipping Ltd.*, 17-mc-174 (S.D.N.Y. May 26, 2017) (Dkt. No. 5); *In re DS-Rendite Fonds Nr. 108 VLCC Ashna GMBH&Co. Tankschiff KG*, 17-mc-00276 (S.D.N.Y. Sept. 5, 2017) (Dkt. No. 11); In re New India Assurance Co. Ltd., 18-mc-00178 (S.D.N.Y. May 2, 2018) (Dkt. No. 7); *see Benaur Decl., Exhibit M, including In re Application of Galaxy Energy and Resources.*, Civil Action No. 19-MC-287-LTS (SDNY 2019). Here, the contemplated foreign proceedings (as in many of the cases cited above) relate to the recognition and enforcement of foreign judgments, and, in enforcing the judgments, the proceedings likely will require the foreign court to examine and adjudicate ownership issues related to assets, in personam jurisdictional issues related to the judgment-debtor's presence in a particular jurisdiction, and other issues related whether certain assets have been fraudulently conveyed or can be attached or turned over to satisfy the award. Indeed, in support of its petition, Lake Holding noted that discovery in this district is needed not only to locate and identify assets, but also to, amongst other things fraudulent transfers, conversion, violation of freezing orders entered by the foreign court, and other matters.

The Belyak respondents do not contest that the banks at issue are present in this district, discovery at present cannot be obtained from those banks in other jurisdictions, and the transactions at issue involved U.S. currency. Moreover, "[t]here is no basis to substantiate that Cyprus, Monaco, BVI or Russian courts will not be receptive to the evidence gathered in the U.S. or that Lake Holding has not been diligent in pursuing discovery worldwide. On the contrary, the Nicolau Declaration stands unrebutted on this Petition." The Belyak respondents

failed to support with any evidence their assertion that the subpoenas are unduly burdensome. The petitioner contends that the Florida proceedings, are different from current Cyrpus, Monaco and Russian proceedings, and are not a basis to abstain from exercising jurisdiction concurrently with the foreign court.  Furthermore, no exceptional circumstances were demonstrated for the abstention doctrine to apply, relying on "*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971)." The instant petition "is broader and seeks discovery in connection with machinations that occurred *worldwide* through the U.S. financial system and the Banks, for Rempel, BTR, the Related Parties and the Belyaks."  According to the petitioner, "[t]his case involves a complex scheme of companies _worldwide_, loans made to BTR, Rempel and Belyaks to the UBS account in Switzerland, with funds then moved around through various structures worldwide.  The Florida litigation is only one piece of this mosaic that respondents have tried to hide."

## REMPEL RESPONDENTS' OPPOSITION

The Rempel respondents contend that, despite the fact that "the Russian Judgments are solely against BTR, Igor Rempel and Mikhail Belyak, Lake Holding seeks widely intrusive and far-reaching discovery relating to individuals who are neither debtors nor parties to any of the foreign proceedings, including Garri Rempel, Yulia Rempel and Larisa Rempel (the 'Rempel Parties') (and, for that matter, Margarita Beliak and Anastasia Belyak)."  The petitioner offered nothing more than a familial relationship of the parties against whom it has no judgments, making discovery "patently improper."  According to the Rempel respondents, the persons from whom discovery is sought are not in this district, rather, they are foreign institutions such as "Banque Lombard Odier & Cie AG; Union Bancaire Privee CBI TDB, Geneva; Kookmin Bank (Korea); and BSI SA, Lugano, Switzerland."  The requested discovery is not for use in a proceeding before a foreign tribunal since "[t]here is nothing adjudicative in nature about Lake

Holding's purported plans to seek recognition and enforcement of the Moscow Judgments in other jurisdictions, and the post-judgment proceedings that are represented by Lake Holding as pending in other jurisdictions establish that its Section 1782 Application is barred by *Euromepa*." Given that the Cypriot court allegedly issued interim freezing orders, no contested factual or legal questions are pending or contemplated to be pending before the foreign tribunal. The petitioner seeks broad and intrusive information about members of Igor Rempel's family in the absence of any proceedings against them and potential actions are not sufficient to satisfy the requirement that the discovery be for use in a foreign proceeding. The petitioner's threat to use discovery in aid of a criminal prosecution is improper use of civil process. Additionally, the Rempel respondents rely on the Belyak respondents' argument that the petitioner does not satisfy the <u>Intel</u> discretionary factors, and the discovery request is unduly burdensome and intrusive.

## REPLY TO REMPEL RESPONDENTS' OPPOSITION

The petitioner asserts that the Rempel respondents' opposition is meritless and not supported by any evidence. The petitioner "should be permitted to seek evidence in order to prosecute claims for violation of court orders, especially the worldwide freezing orders granted in Cyprus a year ago. In such proceedings, the defaulting defendants can be punished for contempt of court, and they can even be deprived of the right to defend Lake Holding's proceedings and their conduct could be deemed to be criminal in nature." The nature of the Cyprus proceedings is adjudicative, as explained by Nicolaou in his declaration, and "[a]n interim order has been issued as a holding measure pending a full *inter partes* hearing." The Rempel respondents did not submit evidence from their Cyprus counsel supporting the argument that the Cyprus proceedings are not adjudicative and "*Euromepa* does not per se prohibit discovery in aid of foreign proceedings concerning the recognition and enforcement of a foreign

11

(Russian) judgment." The contemplated proceedings relate to the recognition and enforcement of foreign judgments, which will require courts likely to adjudicate ownership issues related to assets. The Rempel respondents do not contest that the banks at issue are present in this district and discovery cannot be obtained from them in other jurisdictions. Moreover, the Rempel correspondents and their associated entities have numerous connections to the banks at issue. "There is no basis to substantiate that Cyprus, Monaco, BVI or Russian courts will not be receptive to the evidence gathered in the U.S. or that Lake Holding has not been diligent in pursuing discovery worldwide" or that the subpoenas are unduly burdensome or overly broad.

## LEGAL STANDARD

"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C.A. § 1782(a). The Second Circuit

> has held that § 1782 requires that a three part test must be met prior to its invocation: (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person." *Esses,* 101 F.3d at 875 (quoting *Gianoli Aldunate,* 3 F.3d at 58). In analyzing the second element of this test, . . . we have, . . . previously focused on two questions: (1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding. . . . [T]he district court need not satisfy itself that the discovery sought in the petition is of information that would be discoverable under the laws of the foreign jurisdiction in which the proceeding is pending.

> Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 27-28 (2d Cir. 1998).

> [T]he planned proceedings must be within *reasonable* contemplation. In other words, the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated. . . . [T]he Supreme Court's inclusion of the word "reasonable" in the "within reasonable contemplation" formulation indicates that the proceedings

cannot be merely speculative. At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.

Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 123-24 (2d Cir. 2015).

[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so. . . . [N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid. . . . [A] court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. . . . [A] district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States. Also, unduly intrusive or burdensome requests may be rejected or trimmed.

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65, 124 S. Ct. 2466, 2482-83 (2004) (citations omitted).

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166 (1959).

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244 (1976).

The principles of *Colorado River* are to be applied only in situations "involving the contemporaneous exercise of concurrent jurisdictions." Therefore, a finding that the concurrent proceedings are "parallel" is a necessary prerequisite to abstention under *Colorado River. See Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 603 (2d Cir.1988); *Day v. Union Mines Inc.,* 862 F.2d 652, 655 (7th Cir.1988) ("Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." (internal quotation marks omitted)).

<u>Dittmer v. County of Suffolk</u>, 146 F.3d 113, 117-18 (2d Cir. 1998) (citations omitted).

In determining whether this exception is applicable, the court should consider (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

<u>Woodford v. Cmty. Action Agency of Greene County, Inc.</u>, 239 F.3d 517, 522 (2d Cir. 2001) (internal citations omitted). .

## APPLICATION OF LEGAL STANDARD

### *The Statutory Requirements*

<u>That the Person from Whom Discovery Is Sought Reside (or Be Found) in the District of the District Court to which the Application Is Made</u>

The respondent asserts that "each bank has an office in the District and maintains the records requested. Benaur Decl., ¶3." The Belyak respondents do not challenge the first statutory requirement, namely, that the person from whom discovery is sought reside or be found in the district of the court to which the application is made. The Rempel respondents assert that the petitioner does not address the first statutory requirement in its application.

In paragraph No. 3 of his declaration, made under penalty of perjury, Benaur states:

To the best of my knowledge, information, and belief, based on my investigation of the facts surrounding this dispute and of the entities and individuals, the following entities from which discovery is sought (collectively, the "Banks") either reside or are found in the Southern District of New York: UBS AG; Societe Generale / SG Private Bank; Banque Lombard Odier & Cie AG (aka Lambert Odier Darier Hentsch & Cie); CIM Banque SA; Kookmin Bank (Korea); Credit Suisse; PJSC Sberbank; Bank of America, N.A.; Merrill Lynch Capital Corporation and Citibank, N.A.; Union Bancaire Privee CBI-TDB, Geneva and BSI SA, Lugano, Switzerland.

In a footnote appended to the above sentence, Benaur asserted: "Information on Union Bancaire and BSI SA, Lugano, Switzerland was just received today (see Exhibit N).  I am still investigating whether BSI SA has a presence in New York."  Benaur stated that Exhibit N contains "true and correct screenshots of an excel file titled 'WIRES' produced by Bank of America in response to the subpoena served on the bank in the Florida Domestication Action, received and taken on December 2, 2020."  Assuming that "Union Bancaire" in Benaur's footnote is the same entity identified as "Union Bancaire Privee CBI-TDB" referenced in paragraph No. 3 of Benaur's declaration, Exhibit N does not indicate anywhere that "Union Bancaire Privee CBI-TDB" resides or is found in this judicial district, nor did Benaur identify any portion of Exhibit N in support of his assertion that "Union Bancaire" resides or is found in this judicial district.  Thus, no evidence is presented by the petitioner that "Union Bancaire Privee CBI-TDB" resides or is found in this judicial district.  Benaur stated in a footnote to paragraph No. 3 that "I am still investigating whether BSI SA has a presence in New York." Assuming that "BSI SA" referenced in Benaur's footnote is the same entity identified as "BSI SA, Lugano, Switzerland" in paragraph No. 3 of Benaur's declaration, no evidence is presented by the petitioner that "BSI SA, Lugano, Switzerland" resides or is found in this judicial district.

With respect to the banks referenced in paragraph No. 3 of Benaur's declaration, other than "Union Bancaire Privee CBI-TDB" and "BSI SA, Lugano, Switzerland," Benaur stated that "[t]o the best of my knowledge, information, and belief, based on my investigation of the facts surrounding this dispute and of the entities and individuals, the following entities from which discovery is sought . . .  either reside or are found in the Southern District of New York." Benaur's declaration in paragraph No. 3 of his declaration with respect to banks, other than "Union Bancaire Privee CBI-TDB" and "BSI SA, Lugano, Switzerland," is not rebutted.

The Court finds that the petitioner: (1) established that "UBS AG; Societe Generale / SG Private Bank; Banque Lombard Odier & Cie AG (aka Lambert Odier Darier Hentsch & Cie); CIM Banque SA; Kookmin Bank (Korea); Credit Suisse; PJSC Sberbank; Bank of America, N.A.; Merrill Lynch Capital Corporation and Citibank, N.A." reside or are found in this judicial district; and (2) failed to establish that "Union Bancaire Privee CBI-TDB, Geneva and BSI SA, Lugano, Switzerland" reside or are found in this judicial district.

<u>That the Application Be Made by a Foreign or International Tribunal or "Any Interested Person"</u>

The petitioner asserts that it "is the petitioner and claimant in the Foreign Proceedings, including but not limited to the Cyprus proceedings," "is, or will be, a party to all and any Foreign Proceedings, it is clearly an 'interested person,'" and "[a]s the Melnichenko Decl. states (see ¶ 23) Lake Holding has no intention to seek the recovery of more than 100% of the judgments obtained against BTR, Belyak and Rempel." Neither the Belyak respondents nor the Rempel respondents challenge the third statutory requirement, namely, that the application be made by a foreign international tribunal or "any interested person."

In paragraph No. 23, of the declaration Melnichenko stated: "I next turn to the evidence of entities and physical persons having accounts and/or banking connections with various banks outside the United States." Thus, Melnichenko did not state in paragraph No. 23, as the petitioner asserts, that "Lake Holding has no intention to seek the recovery of more than 100% of the judgments obtained against BTR, Belyak and Rempel." In paragraph No. 3 of his declaration, Melnichenko stated:

> Lake Holding has brought proceedings in Cyprus against BTR [BTR Build To Rent Group Limited], Mr. Belyak and Mr. Rempel to enforce Russian Judgments against BTR to recover principal indebtedness and against the two individuals as guarantors of the majority of BTR's indebtedness. The Russian proceedings are described in an opinion letter from Lake Holding's lawyers, Yustina, dated February 29, 2020.

See Exhibit 2 hereto. See also Benaur MTD Decl. ¶¶ 3 to 19 for descriptions of the history and the proceedings. In various proceedings outside Russia, Lake Holding seeks the recognition and enforcement of the Russian Judgments which it has obtained (which are final and conclusive) and various other forms of relief which are sought against entities connected with BTR, Mr. Belyak and Mr. Rempel and relatives of those two guarantors including Mr. Belyak's daughter, Anastasia Belyak ("Anastasia"), and Mr. Rempel's father, Garri Rempel ("Garri"). See Benaur MTD Decl. ¶ 20.

Benaur stated in paragraph Nos. 5-8 of his declaration:

5. On November 7, 2019, Lake Holding commenced an action in the U.S. District Court, Southern District of Florida (Case No. 19-cv-24629-PCH) asserting claims against Defendants Mikhail Belyak, together with his wife Margarita and daughter Anastasia, and certain companies that they formed in Florida (MFCVSSAR, LP, MB Wall LLC, MB PDT 1901 LLC), for judgment recognition under Florida's Foreign Money Judgments Recognitions Act, fraud, fraudulent and other related claims. Once challenged on the basis of subject matter jurisdiction by the Belyak defendants (who filed declarations averring not to be residents in Florida), the federal court action was withdrawn and two cases were refiled in Florida state court in late November and early December 2019.

6. In the first Florida state court action (Case No. 2019-035235-CA-01), Lake Holding filed certain judgments that Lake Holding obtained in Moscow, Russia against Mikhail Belyak for domestication under Fla. Stat. 55, Foreign Money Judgment Recognitions Act (the "Domestication Action"). In the second state court action (Case No. 2019-035660-CA-01 (44)), Lake Holding asserts claims for fraudulent transfer, alter ego liability, unjust enrichment and related civil claims against Mikhail, Anastasia and Margarita Belyak, and certain companies that they own in Florida, through which they collectively purchased over $22 million in real estate in Florida in 2015 and 2016 (the "Fraudulent Transfer Action"). See Exhibit A hereto (Amended and Supplemental Complaint).

7. On October 6, 2020, the Florida state court entered Final Judgment against Mikhail Belyak in the Domestication Action in the total amount of $36,140,573.95. See Exhibit B. The Fraudulent Transfer Action is currently proceeding in state court, and Defendants are asserting lack of jurisdiction and forum non conveniens defenses, among others, in their motions to dismiss. The parties are scheduled to argue over various cross-motions on December 11, 2020. My Declaration in the Fraudulent Transfer Action in opposition to the Defendants' Motions to Dismiss (the "Benaur MTD Declaration") is attached as Exhibit C (without exhibits, save for the orders for disclosure of documents made in the BVI, Canada and Belize, Exhibits O, P and Q and ¶¶ 21, 23 and 24). A copy of the text only of the Declaration of Vladimir Vasilyevich Melnichenko, the sole owner of Lake Holding, in opposition to the Defendants' Motions to Dismiss (the "Melnichenko MTD Declaration") is attached to his declaration as Exhibit 1.

8. To date, Lake Holding has not pursued any claims in the United States against BTR or Igor Rempel or any of the other Defendants cited above due to lack of

sufficient evidence, at present, to successfully establish personal jurisdiction, thereby, in part, necessitating this application. See also, Melnichenko Decl. ¶ 32.

Benaur stated in paragraph No. 15 of his declaration:

An English translation of Interim Freezing Order entered by the Cypriot Court is annexed as Exhibit K3. For a detailed discussion of this Order, the proceedings in Cyprus, and the subsequent gagging and disclosure orders made in BVI and Belize (see id.) I refer to the Benaur MTD Declaration as well as the Nicolau Declaration filed herewith.

Nicolaou stated in paragraph No. 1 of his declaration that he represents the petitioner "in its three proceedings in Cyprus to enforce various Russian judgments against BTR Build To Ret Group Liited ('BTR'- a company incorporated in Cyprus) and Mikhail Borisovich Belyak ('Mr. Belyak') and Mr. Igor Garrievich Rempel ('Mr. Rempel'), and against certain other defendants." Nicolaou stated that, on March 10, 2020, the petitioner commenced proceedings in the District Court of Nicosia seeking "recognition and enforcement of the Russian judgments pursuant to the 'Treaty between the Republic of Cyprus and the Union of Soviet Republics on Legal Assistance in Civil and Criminal Matters'" and "the Law Concerning Foreign Judgments." Nicolaou asserted that "the Russian Judgments" the petitioner obtained "are final and conclusive." On March 27 and 30, 2020, based on the petitioner's ex parte application, the District Court of Nicosia issued orders which "operate as worldwide freezing orders." The petitioner also made "the *inter partes* applications for disclosure and asset tracing orders," but those applications "are not expected to be heard for several months." The Court finds that the petitioner established that it is an interested person for the purpose of the instant application.

<u>That the Discovery Be for Use in a Proceeding Before a Foreign Tribunal</u>

The petitioner asserts that "the Cyprus Actions are ongoing adjudicatory proceedings" because

enforcing the judgments, the proceedings likely will require the foreign court to examine and adjudicate ownership issues related to assets, in personam jurisdictional issues related to the judgment-debtors' presence in a particular jurisdiction, and other issues related whether certain assets have been fraudulently conveyed or can be attached or turned over to satisfy the judgments. In addition, Lake Holding shall seek discovery to assess whether to seek an adjudication as to whether defendants already violated the Interim Freezing Orders (Benaur Decl., Exhibit K).

Moreover, the petitioner "may well initiate further actions in other jurisdictions after obtaining sufficient discovery from the Banks." The petitioner asserts that discovery sought

will be used to determine whether, how and where Defendants have violated the existing Interim Freezing Orders from the Cyprus Court and also to adjudicate (in other jurisdictions) the imposition of nominee and alter ego liability on various third parties who have assisted and are assisting defendants in hiding assets and absconding with over $36 million which should have been used to repay Lake Holding.

The Belyak respondents assert that discovery sought is not for use in a proceeding before foreign tribunal because Euromepa "establishes that Section 1782 discovery is not available for post-judgment proceedings where the merits have been fully adjudicated – which is exactly the case here," and "[t]here is nothing adjudicative in nature about Lake Holding's purported plans to seek recognition and enforcement of the Moscow Judgments in other jurisdictions." The Rempel respondents assert that discovery sought is not for use in a proceeding before a foreign tribunal because "the post-judgment proceedings that are represented by Lake Holding as pending in other jurisdictions establish that its Section 1782 Application is barred by Euromepa," and "[t]here is nothing adjudicative in nature about Lake Holding's purported plans to seek recognition and enforcement of the Moscow Judgments in other jurisdictions."

Whether a Foreign Proceeding Is Adjudicative in Nature

The court explained the procedural history in Euromepa as follows:

The French Trial Court found in favor of Esmerian, and issued a judgment of approximately $10 million in favor of Esmerian and against the Petitioners. The French Trial Court held that Esmerian and the Petitioners were equally at fault for the loss, and that the loss should therefore be split evenly between them. Following this ruling, and after perfecting their appeal therefrom, Petitioners filed a § 1782 petition (the "Petition"), by order to show cause, in the Southern District of New York, seeking discovery of Esmerian regarding, among other things, proof of ownership of the jewelry, prior insurance of the jewelry, agreements between Esmerian and its affiliates, and substantiation of the jewelry lost. Petitioners sought this discovery for use in the appeal of the French Trial Court's judgment.[1] The district court denied the Petition in a Memorandum and Order, dated May 10, 1994. *Application of Euromepa, S.A.,* 155 F.R.D. 80 (S.D.N.Y.1994). In doing so, the district court focused largely on the French system of discovery, and concluded that granting the Petition might constitute an affront to the French system. *Id.* at 82–84. Petitioners timely appealed to this Court.

After the Petitioners' appeal was argued in this Court, but before this Court rendered a decision, the Court of Appeal of Versailles (the "French Court of Appeal") affirmed the judgment of the French Trial Court, and amended that judgment in a manner favorable to Esmerian. The French Court of Appeal held that "[Esmerian] did not itself commit any misconduct ... [and] due to the failure to carry out its duties as consultant and the blatant fraud on [Euromepa's] part, the responsibility cannot be split with the insured party." The French Court of Appeal accordingly entered a judgment holding Euromepa liable for the entire $20 million loss. Immediately following this judgment, Euromepa filed a petition seeking French bankruptcy protection (the "French Bankruptcy Proceeding").

On March 9, 1995, Esmerian filed a motion in this Court seeking to have Petitioners' appeal dismissed as moot on the basis of the ruling of the French Court of Appeal. Esmerian argued that the appeal was moot because there was no longer any foreign action pending in which the discovery could be used. On March 20, 1995, this Court, without addressing the motion to dismiss the appeal, issued an opinion reversing the district court, and remanding the case for further proceedings. *Euromepa, S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095 (2d Cir.1995) ("*Euromepa I* "). Later that month, on March 27, 1995, Petitioners perfected their appeal of the judgment of the French Court of Appeal to the French Cour de Cassation (the "French Supreme Court").

In response to Esmerian's March 9 motion to dismiss the appeal, this Court (on March 29, 1995) issued an order which construed Esmerian's motion to dismiss the appeal as a motion to withdraw an opinion, stayed the issuance of the mandate, and requested additional briefing as to why the parties did not "advise this Court promptly of the circumstances alleged to have mooted this appeal." Subsequently, on April 11, 1995, this Court denied the motion to withdraw the opinion, noting that we were doing so "without prejudice to any consideration of the intervening developments by the district court."

On remand, Esmerian filed a motion to dismiss the Petition as moot in the district court. The parties completed briefing on the motion to dismiss in June of 1995. The

district court, however, took no action on the motion despite a series of letters for Euromepa, and responses from Esmerian, which sought a ruling.

Finally, in February of 1997, the French Supreme Court affirmed the judgment of the French Court of Appeal. The French Supreme Court found Petitioners' appeal to it to be an abuse of process, and sanctioned the liquidator of Euromepa for pursuing that appeal. Immediately after this ruling, the district court entered the endorsement order dismissing the Petition as moot because the final judgment of the French Supreme Court eliminated all pending proceedings in which Petitioners sought to use the discovery. This appeal followed.

Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 25–26 (2d Cir. 1998).

In analyzing whether a foreign proceeding is adjudicative in nature, the court relied on "*In re Letters Rogatory Issued by Director of Inspection of Government of India,* 385 F.2d 1017 (2d Cir.1967)," in which the court concluded that "the tax assessment proceeding in question was not a proceeding before a 'tribunal' because the role of the government in the administrative proceeding was more akin to a prosecutorial decision to bring a case than to that of a neutral arbitrator, and therefore the proceeding was not adjudicative," and *Fonseca v. Blumenthal*, 620 F.2d 322, 323–24 (2d Cir.1980) (analyzing the function of the Superintendent of Exchange Control under Colombian law)." Euromepa, 154 F.3d at 27. The court noted in its previous holdings "that competency proceedings, [*Foden v. Gianoli Aldunate,* 3 F.3d 54, 62 (2d Cir. 1993)], and bankruptcy proceedings, *Lancaster Factoring Co. v. Mangone,* 90 F.3d 38, 42 ([2d Cir.] 1996), may constitute adjudicative proceedings for purposes of § 1782." Id. The court also noted, in connection with the "pendency question," its previous holding "that a proceeding need not actually be pending, but rather that a proceeding must be 'imminent—very likely to occur and very soon to occur.'" Id. at 28 (quoting In re International Judicial Assistance (Letter Rogatory) for the Federative Republic of Brazil, 936 F.2d 702, 706 (2d Cir.1991)). Moreover, the court noted its previous holding "that there is no requirement of discoverability implied in the statute; that is, the district court need not satisfy itself that the discovery sought in the petition is

of information that would be discoverable under the laws of the foreign jurisdiction in which the proceeding is pending." Id. The court instructed that "[i]n the exercise of its discretion, the district court should not attempt to conduct a detailed analysis of foreign law, but should focus primarily on fostering these twin aims." Id. In its discussion of the applicable legal standard, the court stated:

> Petitioners argue that the district court erred in failing to consider the pending French Bankruptcy Proceeding, and a potential motion to reopen the judgment of the French Court of Appeal as proper predicate adjudicative proceedings in dismissing the Petition as moot. Petitioners also argue that the district court failed to accord this Court's opinion in *Euromepa I* due deference, and that the district abused its discretion in failing to promptly rule on the Petition, or at least on the motion to dismiss, following remand from this Court. The application of the above stated principles to this case shows that the Petitioners' arguments must fail, and that the district court was correct in dismissing the Petition as moot because the requirements of the statute were not satisfied, and there was thus no foreign proceeding in which the discovery could be used.

> Id.

The court concluded:

> While it is clear that a bankruptcy proceeding may, in some instances, be an adjudicative proceeding within the meaning of the statute, *see Lancaster Factoring Co.,* 90 F.3d at 42, we hold that the French Bankruptcy Proceeding in this instance is not an adjudicative proceeding within the meaning of the statute for the following reasons. The merits of the dispute between Esmerian and Euromepa have already been adjudicated and will not be considered in the French Bankruptcy Proceeding. As a matter of French law, the judgment of the French Supreme Court acts as *res judicata* with respect to the merits of the dispute in the French Bankruptcy Proceeding. Thus, in the French Bankruptcy Proceeding, nothing is being adjudicated; the already extant judgment is merely being enforced (to the extent permitted by the assets of the bankruptcy estate). Petitioners' second contention, that the potential reopening of the French Court of Appeal action by a motion based on newly discovered evidence constitutes a "proceeding" under the statute, is meritless. *Brazil* clearly holds that a proceeding must be "imminent—very likely to occur and very soon to occur" in order to satisfy the statutory requirements. 936 F.2d at 706. In this case, as conceded by Petitioners, such a motion to reopen will not even be made, let alone granted, absent newly discovered evidence. The motion to reopen is thus neither very likely to occur nor very soon to occur. Section 1782 is designed to provide discovery in aid of foreign litigation, not to provide discovery

to justify the reopening of already completed foreign litigation. The motion to reopen the proceedings in the French Court of Appeal thus cannot serve as a predicate foreign proceeding for the Petition. Accordingly, because neither the French Bankruptcy Proceeding nor the potential motion to reopen may properly be considered as the predicate foreign action, the district court was correct in dismissing the Petition as moot because at that time there were no foreign proceedings, within the meaning of the statute, in which the discovery could be used. . . . After this Court remanded the Petition to the district court, and up until the time the district court issued its endorsement order, Petitioners' appeal in the French Supreme Court was pending. If that appeal could have provided the predicate foreign action for the Petition, thus providing a live controversy, then Petitioners' argument that the district court abused its discretion and ignored this Court's mandate in failing to act during the pendency of that appeal might have some merit. However, because that appeal again fails to meet the second element of the *Gianoli Aldunate* test—"that the discovery be for use in a proceeding before a foreign tribunal," 3 F.3d at 58—Petitioners' argument fails.

Id. at 28-29.

In considering whether discovery is "for use" in a foreign tribunal, the court concluded that "the discovery certainly could not be "for use in" the French Supreme Court appeal if that court does not take and hear new evidence," and "the affidavits and other material submitted by the parties show that the French Supreme Court does not, in fact, take and hear new evidence." Id. at 29.

This case does not involve, as Euromepa does, bankruptcy proceedings or a potential motion to reopen the proceedings in a foreign court of appeal, nor does it involve administrative or competency proceedings involved in the cases upon which the court relied in Euromepa for its analysis. The foreign proceedings at issue in this case, as Nicolaou stated in his declaration, are the proceedings commenced by the petitioner, on March 10, 2020, in the District Court of Nicosia seeking "recognition and enforcement of the Russian judgments pursuant to the 'Treaty between the Republic of Cyprus and the Union of Soviet Republics on Legal Assistance in Civil and Criminal Matters'" and "the Law Concerning Foreign Judgments." Nicolaou also stated that: (i) on March 27 and 30, 2020, based on the petitioner's ex parte application, the District Court of Nicosia issued orders which "operate as worldwide freezing orders"; and (ii) the

petitioner made "the *inter partes* applications for disclosure and asset tracing orders," but those applications "are not expected to be heard for several months." The unrebutted evidence submitted by the petitioner demonstrates that the proceedings in the District Court of Nicosia are pending, the "worldwide freezing orders" have been issued and the petitioner's "*inter partes* applications for disclosure and asset tracing orders" are pending and "expected to be heard."

The Euromepa court held "that the French Bankruptcy Proceeding in this instance is not an adjudicative proceeding within the meaning of the statute" because: (a) "[t]he merits of the dispute between Esmerian and Euromepa have already been adjudicated and will not be considered in the French Bankruptcy Proceeding"; (b) "the judgment of the French Supreme Court acts as *res judicata* with respect to the merits of the dispute in the French Bankruptcy Proceeding"; and (c) "in the French Bankruptcy Proceeding, nothing is being adjudicated; the already extant judgment is merely being enforced (to the extent permitted by the assets of the bankruptcy estate)." Here, the petitioner commenced administrative proceedings before the Moscow Region Arbitration Court ("MRAC") against BTR Build To Rent Group Limited to recovering money due under three loan agreements and the proceedings were completed and became final in favor of the petitioner; thus, the merits of the three loan agreement disputes were resolved and will not be considered by the District Court in Nicosia, which is asked to recognize and enforce the Russian judgments. Nicolaou did not state and no evidence was presented by the petitioner explaining whether, if the Russian judgments are recognized by the District Court in Nicosia, such judgments will act as *res judicata* with respect to the merits of the dispute in the enforcement proceedings in the District Court in Nicosia. Even assuming that the Russian judgments, if recognized by the District Court in Nicosia, will act as *res judicata* with respect to the merits of the dispute in the enforcement proceedings in the District Court in Nicosia, here,

unlike in Euromepa, no bankruptcy proceeding exists in which "nothing is being adjudicated; the already extant judgment is merely being enforced (to the extent permitted by the assets of the bankruptcy estate)." Here, the petitioner seeks to recognize and enforce the judgments in its favor and the close universe of "the assets of the bankruptcy estate" that existed in Euromepa does not exist. The District Court of Nicosia issued orders which "operate as worldwide freezing orders" and the petitioner made "the *inter partes* applications for disclosure and asset tracing orders," which "are not expected to be heard for several months." Unlike the bankruptcy proceeding in Euromepa, in which "nothing is being adjudicated," the judgments recognition and enforcement proceedings in Cyprus are adjudicative in nature, as the petitioner's evidence shows. The petitioner's "*inter partes* applications for disclosure and asset tracing orders" will be heard by the District Court in Nicosia, which means that the court will take and hear evidence in order to determine facts and to apply the law to those particular facts found by the court. Thus, the District Court in Nicosia will necessarily have to perform an adjudicative function by adjudicating the facts in connection with the petitioner's "disclosure and asset tracing" applications. "[A]djudicative facts," are "'facts about the parties and their activities, businesses, and properties,' as distinguished from 'general facts which help the tribunal decide questions of law and policy and discretion.'" Langevin v. Chenango Court, Inc., 447 F.2d 296, 300 (2d Cir. 1971). The issues of asset identification and ownership are examples of adjudicative facts that the District Court in Nicosia will have to determine in the Cyprus judgments recognition and enforcement proceedings. Thus, a live controversy appears to exist in the District Court in Nicosia at minimum with respect to: (a) the identity of any assets to which the petitioner is entitled based on the Russian judgments; and (b) the ownership of any assets to which the

petitioner is entitled based on the Russian judgments, necessitating adjudication by the District Court in Nicosia.

The Belyak respondents, as well as the Rempel respondents, assert that <u>Euromepa</u> "establishes that Section 1782 discovery is not available for post-judgment proceedings where the merits have been fully adjudicated," relying on

> • *In re MT Baltic Soul*, No. 15-mc-319 (LTS), 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (denying an application for discovery that "would only be in relation to a contemplated post-judgment action, which Euromepa holds is not a 'foreign proceeding' within the meaning of section 1782");
> • *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 706-07 (S.D.N.Y. 2015) (denying an application for discovery to assist with obtaining a pre-judgment attachment);
> • *Jiangsu Steamship Co*., No. 14 Civ. 9997(CM), 2015 WL 3439220, at *1 (S.D.N.Y. Feb. 5, 2015) (denying an application for discovery to "locate ... entities' assets" in New York banks to assist with obtaining a pre-judgment attachment).

The <u>In re MT Baltic Soul</u> court concluded, without any analysis, that

> the discovery Petitioners seek is precluded by the Second Circuit's decision in *Euromepa,* 154 F.3d at 27 (2d Cir.1998), because the liability of Tadema and Taleveras Group has already been conclusively established by the English court action. Any discovery as to Tadema and Taleveras Group would only be in relation to a contemplated post-judgment action, which *Euromepa* holds is not a "foreign proceeding" within the meaning of section 1782.

> <u>In re MT Baltic Soul</u>, 2015 WL 5824505, at *2.

The Court is not convinced by the <u>In re MT Baltic Soul</u> court's conclusory assertion that <u>Euromepa</u> precludes Section 1782 discovery in a "post-judgment action" where the court did not conduct any factual analysis of the particular circumstances of that case, including any analysis of whether the "post-judgment action" in that case is adjudicative in nature. The Belyak and Rempel respondents' reliance on <u>In re Asia Mar. Pac. Ltd.</u> is misplaced because that case is inapposite, as the Belyak respondents acknowledge, involving "discovery to assist with obtaining a pre-judgment attachment," not discovery to be used in judgment enforcement proceedings.

The Belyak and Rempel respondents also rely on Jiangsu Steamship Co., in which the court found the language from Euromepa, namely, (i) "[t]he merits of the dispute between Esmerian and Euromepa have already been adjudicated" and (ii) "in the French Bankruptcy proceeding, nothing is being adjudicated; the already extant judgment is merely being enforced (to the extent permitted by the assets of the bankruptcy estate)," applicable in that case because

> Jiangsu does not seek this discovery in order to help decide the "merits of the dispute" between it and SSL; it wants the information about SSL's and Mingli's assets so it can easily obtain advance security for such a judgment (assuming that there is a foreign jurisdiction that, like the United States of America, has a pre-judgment attachment procedure) or enforce whatever judgment it might obtain in the as-yet-to-be-brought London arbitration. However, neither pre-judgment attachment nor post-judgment enforcement proceedings are "adjudicative" in nature; indeed, the latter is the explicit holding of Euromepa, and if an enforcement proceeding is not adjudicative in nature, I fail to see (and Jiangsu does not suggest) how a pre-judgment security proceeding could possibly so qualify.

> Jiangsu Steamship Co., 2015 WL 3439220, at *4.

The Court is not convinced that Euromepa held, as the Jiangsu Steamship Co. court stated, that "post-judgment enforcement proceedings are [not] 'adjudicative' in nature" because the proceedings at issue in Euromepa were bankruptcy proceedings, not judgment recognition and enforcement proceedings. The Court finds that the petitioner established that the foreign proceedings in Cyprus for "recognition and enforcement of the Russian judgments" are adjudicative in nature.

### Whether a Foreign Proceeding Is Within Reasonable Contemplation

The Supreme Court explained that an adjudicative proceeding need not "be 'pending' or 'imminent' for an applicant to invoke § 1782(a) successfully." Intel Corp. 524 U.S. at 253-54, 124 S. ct. at 2476-77. The Supreme Court held that "§ 1782(a) requires only that a dispositive ruling by the Commission, reviewable by the European courts, be within reasonable

contemplation." Id., at 259, 124 S. Ct. at 2480. The Court finds that the petitioner established more than "reasonable contemplation" of a foreign proceeding required by Intel Corp., namely, it established that a foreign proceeding is ongoing in the District Court in Nicosia.

The petitioner having presented evidence that discovery is for use in the "recognition and enforcement of the Russian Judgments" proceedings pending before the District Court in Nicosia and that the District Court in Nicosia will hear evidence and adjudicate facts in those proceedings, the Court is satisfied that the petitioner established that the discovery is for use in a proceeding before a foreign tribunal.

### *The Discretionary Factors*

Whether Nonparticipants in the Foreign Proceeding May be Outside the Foreign Tribunal's Jurisdiction and their Evidence, Available in the United States, May Be Unobtainable Absent Section 1782(a) Aid

The petitioner asserts that none of the banks will be parties or participants in the foreign proceedings, and "[t]o date, it has not been possible to obtain the subject bank documents as part of any proceedings to date held in Russia, Cyprus or elsewhere." The Belyak respondents, on whose arguments the Rempel respondents rely, contend that the first Intel factor weighs against discovery because "M. Belyak, A. Belyak, and Margarita are parties to one or more of the subject foreign proceedings in Russia, Cyprus and Monaco; therefore, Lake Holding can ostensibly – and must properly be required to – obtain all of the discovery it seeks from them in those proceedings since they are parties." The Belyak respondents' reliance on Schmitz v. Bernstein Liebhard & Lifshitz, LLP., 376 F.3d 79 (2d Cir. 2004), is misplaced because that case is inapposite. In Schmitz, discovery under Section 1782 was sought from Deutsche Telecom AG's ("DT") counsel Cravath, Swaine & Moore ("Cravath") for use in German lawsuits the petitioners commenced against DT. The district court determined that "the German government

was obviously unreceptive to the judicial assistance of an American federal court" based on evidence, including "specific requests from the German Ministry of Justice and the Bonn Prosecutor to deny petitioners the discovery they sought at this time. The German authorities expressed concerns that granting discovery would jeopardize the ongoing German criminal investigation of DT and 'jeopardize German sovereign rights.'" Id. at 84. The district court also determined in that case that "granting the request here 'would in fact encourage foreign countries to potentially disregard the sovereignty concerns of the United States and generally discourage future assistance to our courts.'" Id. at 84-85. The Second Circuit found that the district court did not abuse its discretion when determining the first Intel factor:

> Although technically the respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation. *Intel* suggests that because DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for § 1782 help "is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at ——, 124 S.Ct. at 2483.

> Id. at 85.

Unlike in Schmitz, the banks at issue here from whom Section 1782 discovery is sought are neither participants in the Cyprus proceedings, as was DT in German proceedings in Schmitz, nor the agents of the participants in the Cyprus proceedings, as was DT's counsel Cravath. Unlike in Schmitz, no evidence was submitted by the Belyak respondents and the Rempel respondents in support of their opposition to the petition showing specific requests from the Cyprus authorities to deny petitioner the discovery sought or expressing concerns that granting discovery would jeopardize any ongoing criminal investigation in Cyprus or jeopardize sovereign rights of the Republic of Cyprus. The Belyak respondents and the Rempel respondents failed to submit any evidence showing that granting the request here "would in fact

encourage foreign countries to potentially disregard the sovereignty concerns of the United

States and generally discourage future assistance to our courts," as was the case in Schmitz.

The Belyak respondents make citation to Kiobel v. Cravath, Swaine & Moore LLP,

895 F.3d 238, 245 (2d Cir. 2018), arguing that "'under existing precedent in this Circuit,

when the real party from whom documents are sought . . . is involved in foreign proceedings, the

first Intel factor counsels against granting a Section 1782 petition seeking documents' through a

proceeding in the United States."  In Kiobel

> Petitioner-Appellee Esther Kiobel filed a petition in the United States District Court
> for the Southern District of New York to subpoena documents under 28 U.S.C. §
> 1782 from Respondent-Appellant Cravath, Swaine & Moore LLP ("Cravath"), in
> aid of her lawsuit against Royal Dutch Shell ("Shell") in the Netherlands. Cravath
> is holding the documents because it represented Shell in prior litigation brought by
> Kiobel against Shell in that district.
>
> Id. at 240.

The Second Court found it was an abuse of discretion to grant the petition for discovery under

Section 1782 because "an order compelling American counsel to deliver documents that would

not be discoverable abroad, and that are in counsel's hands solely because they were sent to the

United States for the purpose of American litigation, would jeopardize 'the policy of promoting

open communications between lawyers and their clients.'"  Id. at 241.  The Second Circuit relied

on Schmitz in reviewing the district court's analysis, stating that, "when the real party from

whom documents are sought (here, Shell) is involved in foreign proceedings, the first Intel factor

counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the

foreign company."  Kiobel, 895 F.3d at 245 (citing Schmitz, 376 F.3d at 85).  Here, the petitioner

does not seek discovery from counsel to the Belyak respondents and counsel to the Rempel

respondents, no attorney-client privilege or other privilege identified by the Belyak and Rempel

respondents is involved and no evidence exists that the petitioner seeks documents that the

Belyak respondents and the Rempel respondents already produced to the banks in some other proceeding or pursuant to a confidentiality order from another proceeding barring the instant discovery request; thus, unlike in Kiobel and Schmitz, the Belyak respondents and the Rempel respondents are not "the real party from whom documents are sought" in this petition. The petitioner submitted evidence showing it seeks documents available in the United States from the banks within this judicial district who are nonparticipants in the Cyprus proceedings and not subject to jurisdiction in the Cyprus proceeding, which would otherwise be unobtainable absent Section 1782 aid. The Court finds that the first Intel factor favors granting the request for discovery pursuant to Section 1782.

> The Nature of the Foreign Tribunal, the Character of the Proceedings Underway Abroad, and the Receptivity of the Foreign Government or the Court or Agency Abroad to U.S. Federal-Court Judicial Assistance

The petitioner contends that the nature of the foreign proceedings and contemplated future actions weigh in favor of the petitioner's request because granting the request will not offend any foreign jurisdiction and the petitioner seeks assistance to locate the assets of the defendants who are actively seeking to preclude the petitioner's enforcement efforts. The Belyak respondents, on whose arguments the Rempel respondents rely, assert that the petitioner "failed to provide sufficient information or law from the jurisdictions where the purported pending and/or contemplated foreign proceedings are taking place for the Court to analyze this factor" and "appears to be intentionally obfuscating the character of the purported pending or contemplated proceedings in those jurisdictions." The conclusory and self-serving assertion that the petitioner "appears to be intentionally obfuscating the character of the purported pending or contemplated proceedings" without citation to any evidence is rejected as unsupported and meritless. The petitioner submitted evidence describing the nature of the proceeding in the

District Court in Nicosia, the character of the Russian judgment recognition and enforcement proceedings in Cyprus, the relevant law applicable in the ongoing Cyprus proceedings, as well as the procedural posture in the Cyprus proceedings. Nicolaou stated in his declaration that nothing in the Cypriot law or the rules of the Cypriot Court "forbid the uses in Cyprus of the relevant information that" the petitioner seeks in its petition. The Court finds that the second Intel factor favors granting the request for discovery pursuant to Section 1782.

> Whether the § 1782(a) Request Conceals an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Other Policies of a Foreign Country or the United States

The petitioner asserts that the defendants and others identified to have made payments on behalf of the defendants "have set up structures consisting in 'smoke and mirrors' over the years both before and after defaults" preventing the petitioner from recovering on its judgments. The Belyak respondents, on whose arguments the Rempel respondents rely, assert that the petitioner "has not been forthcoming as to whether it has requested discovery in the purported pending foreign cases or whether it can" and the petitioner's "lack of interest on the part of an applicant in pursuing any discovery under the laws governing the proceedings in other forums indicates an attempt to circumvent those rules." The Belyak respondents and the Rempel respondents fail to make citation to any binding authority in support of their arguments that the: (i) petitioner's "lack of interest … in pursuing any discovery under the laws governing the proceedings in other forums indicates an attempt to circumvent those rules"; and (ii) petitioner is required to pursue discovery in the Cyprus proceedings before making the instant application. The petitioner submitted evidence detailing its international attempts to recover on the Russian judgments and various acts and omissions by the judgments debtors and their affiliates preventing the petitioner from pursuing recovery on its Russian judgments. The Court finds that the petitioner's Section 1782 request does not conceal an attempt to circumvent foreign proof-gathering restrictions or

other policies of a foreign country or the United States. The Court finds that the third <u>Intel</u> factor favors granting the request for discovery pursuant to Section 1782.

Whether Requests Are Unduly Intrusive or Burdensome

The petitioner contends the requests are not unduly burdensome because the information relevant to the foreign proceedings is in this district and the banks store such information, not available to the petitioner, as a matter of course. The Belyak respondents, on whose arguments the Rempel respondents rely, contend that the petitioner "seeks essentially every document conceivably related to the Belyak Parties, including privileged financial documents and asset information of the Belyak Parties and unrelated third parties," making "[s]uch a vast intrusion into potential communications and financial information" inappropriate. The Belyak respondents and the Rempel respondents do not make citation to any evidence in support of their argument that the discovery requests are unduly intrusive or burdensome and they failed to identify the nature and extent of any intrusion or the burden they assert. The petitioner submitted evidence of its efforts to identify entities which have made payments on the defendants' behalf and to investigate the "manipulation of assets ownership and control and fraudulent transactions" calculated to immunize the assets from the execution of the judgments the petitioner obtained. Since the petitioner seeks relevant information electronically stored by the banks, the Court presumes, without finding at this stage of the proceeding, that gathering and producing such information by the banks are not unduly intrusive or burdensome exercises. The Court finds that the fourth <u>Intel</u> factor does not militate against granting the request for discovery pursuant to Section 1782.

***Colorado River* Abstention**

The Belyak respondents, but not the Rempel respondents, assert that the court should abstain from exercising jurisdiction in favor of the Florida proceedings under "*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)" because the "Moscow Judgments are the basis of two pending Florida state court proceedings brought by Lake Holding over one year before Lake Holding initiated this proceeding, one of which has given rise to a pending Florida appellate court proceeding." The petitioner asserts that no exceptional circumstances were demonstrated for the abstention doctrine to apply, relying on "*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971)." The Belyak respondents do not seek abstention under Younger, which provides that federal courts must decline to exercise jurisdiction in three exceptional circumstances: (1) to preclude "federal intrusion into ongoing state criminal prosecutions"; (2) in "certain civil enforcement proceedings"; and (3) to preclude interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Trump v. Vance, 941 F.3d 631, 637 (2d Cir.). Rather, they seek abstention under Colorado River.

### Whether Concurrent Proceedings Are Parallel

The Belyak respondents assert that two pending Florida state-court proceedings brought by the petitioner concern the Moscow judgments and "[o]ne of the issues in those proceedings is allegations of fraud by Lake Holding in the recognition and domestication process; another issue is whether Lake Holding may enforce those judgments against A. Belyak and Margarita. Surgeon Decl. ¶¶ 8, Ex. 5 at 1-3." Surgeon stated in his declaration that "the Initial Brief of Appellant, Mikhail Borisovich Belyak, dated December 7, 2020, which was filed in the Third

District Court of Appeal, State of Florida, is attached hereto as Exhibit 5." Exhibit 5 indicates

that it is an initial brief in the action captioned <u>Mikhail Borisovich Belyak, Appellant vs. Lake</u>

<u>Holding & Finance S.A., Appellee</u>, "DCA Case No. 3D20-1013 L.T. Case No. 19-35235-CA-

01," filed in the District Court of Appeal Third District, State of Florida. The appellant asserts in

that document:

> This appeal arises from efforts by Lake Holding, a British Virgin Islands corporation, to domesticate and enforce three Russian judgments totaling over $36,000,000, entered by a Moscow court in favor of Lake Holding and against Belyak, a Russian citizen and Moscow resident. (the "Moscow Judgments"). The trial court erred by domesticating the judgments, because the court failed to follow the plain language of the relevant statute: the Florida Uniform Out-of Country Foreign Money-Judgment Recognition Act, sections 55.601-.607, Florida Statutes (the "Act"). Under established precedent, a statute of this type must be strictly complied with. The trial court failed to apply the Act as written.

The parties in the Florida state-court proceedings are the petitioner and only one of the three

Belyak respondents, Mikhail Borisovich Belyak. According to the appellant's assertion in

Exhibit 5, the issue litigated in the Florida court is whether the trial court "erred by

domesticating the [Moscow] judgments" against the appellant." However, this action does not

involve litigation of the issue being litigated in the Florida court because the matter before the

Court is an application for discovery pursuant to 28 U.S.C. § 1782, which does not encompass

litigation respecting "domesticating the [Moscow] judgments."

The Court finds that the Florida proceedings and this action are not parallel because they

do not involve substantially the same parties who are contemporaneously litigating substantially

the same issue in another forum. Accordingly, the necessary prerequisite to abstention under

<u>Colorado River</u> is not met by the Belyak respondents. See <u>Dittmer</u>, 146 F.3d at 118.

**CONCLUSION**

For the foregoing reasons, the petitioner's application for discovery pursuant to 28 U.S.C.

§ 1782, Docket Entry No.1, is granted.

Dated:   New York, New York          SO ORDERED:
        June 23, 2021

                                                    KEVIN NATHANIEL FOX
                                                    UNITED STATES MAGISTRATE JUDGE